IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

DEC 1 8 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

WENDY PORCH                                    :
10814 Pleasant Valley Road                     :
Waverly, IL 62692                              :
                                               :
          Plaintiff,                           :
                                               :
     v.                                        :        Case No. 2:12cv690
                                               :
AMERICAN K-9 INTERDICTION, LLC                 :
4007 Burdette Road                             :
Carrsville, VA 23315                           :
                                               :
     SERVE:    William Riddick, Registered Agent :
               353 Main Street                 :
               Smithfield, VA 23431            :
                                               :
               and                             :
                                               :
JOHN KELLO                                     :
27540 Walters Highway                          :
Carrsville, VA 23315-4415                      :
                                               :
          Defendants.                          :

## COMPLAINT FOR DAMAGES

**(Sex Discrimination – Quid Pro Quo; Sex Discrimination – Promotion; Hostile Work Environment Based on Sex; Retaliation – Title VII; Retaliation – False Claims Act; Sexual Battery; Intentional Infliction of Emotional Distress; Negligent Retention; Unpaid Overtime)**

1.     The Plaintiff, Wendy Porch, by and through undersigned counsel, John C. Cook, Lee B. Warren, Broderick C. Dunn, and the law firm of Cook Craig & Francuzenko, PLLC, hereby asks this Court for judgment against American K-9 Interdiction, LLC ("AK9I") and John Kello ("Kello") and in further support thereof states as follows:

1

## JURISDICTION AND VENUE

2.   This Court has subject-matter jurisdiction over this action pursuant to the following statutes:

   a. Count I-IV: 28 U.S.C. § 1331 because they allege violations of Title VII of the Civil Rights Act of 1964

   b. Count V: 28 U.S.C. § 1331 because it alleges violations of Title VII of the False Claims Act

   c. Count VI-IX: 28 U.S.C. § 1367 because they rely on facts congruent with Plaintiff's Title VII claims

   d. Count X: 28 U.S.C. § 1331 because it alleges violations of the Fair Labor Standards Act

3.   Under 42 U.S.C. § 2000e-5(3), this Court has jurisdiction over, and is the proper venue for, Ms. Porch's Title VII claims because the employment records relevant to the allegedly unlawful employment practices are maintained at the AK9I headquarters in Isle of Wight County, Virginia.

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because upon information and belief, the Defendants reside in this district and AK9I made its employment decisions about Ms. Porch at its headquarters in Isle of Wight County, Virginia.

## PARTIES

5.   The Plaintiff, Wendy Porch, is a female adult resident and citizen of the State of Illinois.

6.   Defendant American K-9 Interdiction, LLC is a Virginia limited liability company headquartered in Isle of Wight County, Virginia.

2

7.   Upon information and belief, Defendant John Kello is an adult resident and citizen of Isle of Wight County in the Commonwealth of Virginia.

## FACTS

8.   Richard McDonald of AK9I hired Ms. Porch as a dog trainer on or about November 29, 2010.

9.   At all times relevant hereto, AK9I employed more than 15 people.

10.   Ms. Porch was to train dogs in the detection of improvised explosive devices, pursuant to a government contract.  The dogs would then be deployed to Afghanistan and other locations to accompany United States military personnel.

11.   Ms. Porch learned early on in her employment that AK9I had never sent any female employees to Afghanistan to work with dogs there.  Those positions came with a security clearance and $14,500 per month in pay.  Mr. McDonald, Defendant John Kello (who eventually became Ms. Porch's Team Leader/Supervisor), Rosario Tuminelli (Ms. Porch's indirect supervisor), and Rhett Riddle (another AK9I manager) made it known that female AK9I employees had not been sent to Afghanistan and would not be sent to Afghanistan.

12.   Ms. Porch disclosed to Mr. McDonald, prior to joining AK9I, that she had only two years' experience relevant to AK9I's work, although she had general experience training dogs.

13.   Mr. McDonald assured her that her qualifications were adequate.

14.   During Ms. Porch's employment with AK9I, she lived in company housing.

15.   AK9I paid Ms. Porch on a salary basis, $55,000.00 per year, and told her that she was exempt from overtime.

3

16.   Ms. Porch frequently worked more than 40 hours per week, often arriving at work at 5:30 A.M. and leaving at 3:30 P.M., with only a brief lunch break.

17.   Throughout January 2011, Mr. McDonald teased Ms. Porch about sleeping with a coworker, Emory Bullard, based on the fact that they were training their personal dogs together. He also teased her about sleeping with Adam Ward, another coworker.

18.   On or about January 28, 2011, Ms. Porch was assigned to a training team whose Team Leader/Supervisor was Mr. Kello.

19.   On or about February 7, 2011, Mr. Kello informed Ms. Porch that she had been placed on his team because Ron Prince, another employee, had demanded of Mr. McDonald that Mr. Prince's wife, Deborah, not be on Mr. Kello's team because of his reputation as a womanizer.

20.   Immediately after Ms. Porch was transferred to Mr. Kello's team, he began flirting with her and making inappropriate comments about how good her body looked.

21.   On or about February 14, 2011, Mr. McDonald said to Ms. Porch, "Isn't that right, Wendy? Aren't women only good for one thing? You are only good for lying on your back with your legs up in the air."

22.   On or about February 21, 2011, while taking a break from training dogs, Mr. Kello grabbed Ms. Porch's thigh, then had Daniel Barnett, another trainer, do the same. She told both of them to stop and respect her personal space.

23.   This event was reported to Mr. McDonald. He told Ms. Porch that AK9I would lose the government contract if the Marine Corps learned that the trainers were behaving that way during training.

4

24. On or about February 26, 2011, following a going-away party for an AK9I employee, Mr. Kello attempted to seduce Ms. Porch at her company housing in South Carolina. She refused his advances three times. Mr. Kello then told Ms. Porch that Mr. Riddle was his friend and decided which employees could go to Mojave Viper, a large United States Marine Corps event in California, for EMV training; that if she did not get EMV training, she would not be able to go to Afghanistan for AK9I, a position that would have included a security clearance and far better pay; and that she should not "piss him off" because that would anger Mr. Riddle, Mr. Riddle would go to Mr. McDonald, and Mr. McDonald would fire Ms. Porch. Solely because of these threats and insinuations, Ms. Porch had sexual intercourse with Mr. Kello.

25. On or about March 1, 2011, Mr. McDonald told Ms. Porch that he had placed a bet on whether she and Mr. Kello would sleep together and told Mr. Kello that he made Mr. McDonald lose the bet because Mr. Kello slept with Ms. Porch.

26. On or about March 4, 2011, while Mr. Kello and Ms. Porch were driving together to have dinner with AK9I employees, Mr. Kello pulled the vehicle over and tried to climb on top of Ms. Porch. She pushed him off and told him to stop.

27. On or about March 11, 2011, Mr. Kello suggested to Ms. Porch that they carry on an adulterous affair while they were training dogs in California. Ms. Porch refused.

28. On March 19, 2011, Ms. Porch left for Yuma, Arizona and Twenty Nine Palms, California to train dogs.

29. Prior to leaving on this trip, Mr. Kello told Ms. Porch that Mr. McDonald had warned Mr. Kello not to sleep with Ms. Porch.

30. While traveling on behalf of AK9I to train dogs at these locations, Ms. Porch rode in a vehicle owned and/or operated by AK9I with other AK9I employees as passengers.

31.    During this travel, which lasted from March 19 through approximately May 5, Ms. Porch frequently worked more than 10 hours per day in addition to travel time.

32.    On several occasions, the other AK9I employees left Ms. Porch at the hotel for an entire day while they worked at a customer site.

33.    While on this trip, Mr. Kello again told Ms. Porch that Mr. McDonald had warned Mr. Kello not to sleep with Ms. Porch.

34.    On or about March 22, 2011, while the AK9I employees were in Yuma for training, Mr. Kello came into Ms. Porch's hotel room and fondled her from behind.  She told him to stop.

35.    On or about April 8, 2011, Ms. Porch called Mr. Tuminelli, her indirect supervisor in the South Carolina AK9I office.  She told him that Mr. Kello was verbally abusing her in front of the Marine trainees and had called her a "fucking cunt."  Mr. Tuminelli said, "If you were having this conversation with Nigel Rhodes [AK9I's owner] or Mike Dougherty [an executive at the AK9I office in Virginia], John would be brought home immediately and fired."

36.    A few days later, Mr. Kello confronted Ms. Porch and told her that she should not have gone to Mr. Tuminelli with her complaints.

37.    In April 2011, out of frustration with her working conditions, Ms. Porch applied for a job with K2 Solutions, another company training bomb-detection dogs.  K2 eventually extended an offer of employment to her.

38.    On or about April 29, 2011, Mr. Kello sent text messages to Ms. Porch saying, "Well if you're ready, how do you want it then? ... Cock sandwich is today's special."

39.    During the trip back from California, Mr. Kello underfed the dogs, gave them inadequate and dirty water, and allowed them to use the bathroom too infrequently.

40.     On or about May 2, 2011, Mr. Kello sent a text message to Ms. Porch saying, "I'm gonna bring your food you want me to eat that pussy."

41.     The same day, after the AK9I employees had checked into a hotel, Ms. Porch was sitting in the back seat of the AK9I truck. Mr. Kello came to the door and grabbed Ms. Porch's crotch and butt. She told him to leave her alone and struck him.

42.     The same day, Mr. Kello sent her another message saying, "We should fuck like rabbits to celebrate" the death of Osama bin Laden. On that same day, while the AK9I employees had stopped at a gas station, Mr. Kello approached Ms. Porch from behind and pressed his crotch against her backside. She told him to stop. Mr. Kello also sent a multimedia text message to Ms. Porch with a picture of his crotch and the words, "I'm waiting."

43.     On or about May 13, 2011, Ms. Porch, frustrated by her treatment, asked Mr. McDonald whether he wanted her to leave the company. He said no and that she was an excellent employee who did "what was asked of her and then some."

44.     In the same conversation, Ms. Porch informed Mr. McDonald that Mr. Kello had, while in California, neglected to properly feed, water, and air the dogs properly; that he had picked dogs up by their heads and shaken them; and that he threw one dog against its crate for misbehaving. Mr. McDonald said that he had done some of the same things. However, he was upset by the improper watering.

45.     Ms. Porch also informed Mr. McDonald about Mr. Kello's verbal abuse. Mr. McDonald stated that such behavior from Mr. Kello was normal.

46.     Ms. Porch also informed Mr. McDonald that she had been harassed and bullied by Chad Radt, another AK9I employee, and that she intended to file harassment charges against Mr. Radt.

7

47.    Based on this conversation, Ms. Porch believed Mr. McDonald intended to help and support her, so she declined the job offer from K2 Solutions.

48.    On or about May 16, 2011, Mr. McDonald teased Ms. Porch about not shaving her legs and asked Kim Parkman, another trainer, "how she would like to get in bed with those [Ms. Porch's] legs."

49.    On or about June 20, 2011, during a meeting with Ms. Porch, Mr. McDonald told her that "what goes on here in South Carolina stays here in South Carolina," that is, Ms. Porch should not go to Human Resources at the Virginia headquarters to complain about Mr. Kello or anything else.

50.    On or about June 21, 2011, Debbie Rowley, an AK9I employee in Human Resources, met with Ms. Porch and Mr. Riddle, and they informed Ms. Porch that Renato Denaro of the Bureau of Alcohol, Tobacco, and Firearms at the Yuma site had complained about her. Agent Denaro later denied this claim.  Ms. Rowley also accused Ms. Porch of trying to break up Corey Trafton and Mary Beth Mosher, two AK9I employees who were in a relationship. This allegation was also false. Ms. Rowley also accused Ms. Porch of urinating in front of Marines while training them in South Carolina. This allegation was also false.

51.    On June 26, 2011, Ms. Porch became ill and called Mr. McDonald to leave a voicemail that she would not be at work the following day.

52.    On June 28, 2011, Ms. Porch called in and messaged Mr. McDonald to let him know that her physician had taken her off work indefinitely due to her illness.

53.    On June 28, 2011, George Harper, who was then Ms. Porch's attorney, faxed a letter to AK9I's Virginia headquarters describing the harassment and retaliation which Ms. Porch

had experienced.  He further stated that Ms. Porch was ill from her mistreatment at AK9I and being seen by a doctor for it.

54.     On June 29, 2011, Mr. Riddle came to Ms. Porch's house and handed her a letter telling her to be out of the company house by July 3, 2011.

55.     On or about June 30, 2011, Mr. McDonald told Nigel Rhodes, AK9I's owner, that he would "get rid of" Ms. Porch.

56.     On July 1, 2011, Ms. Porch received a letter from Debbie Rowley stating that her doctor's note was insufficient because it was signed by the nurse, not the doctor, and that Ms. Porch would be fired if she did not report to work on July 5, 2011.

57.     On July 7, 2011, Ms. Porch received a letter from Ms. Rowley stating that she had been terminated for not calling in properly to report her absences.

58.     A few weeks before Ms. Porch's termination from AK9I, Mr. McDonald told Ms. Parkman that Ms. Porch would not be with the company for long.

59.     Upon information and belief, since Ms. Porch's termination, AK9I lost the government contract which Ms. Porch worked on and closed the South Carolina office that was her primary work location.

60.     Ms. Porch filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 7, 2011.

61.     On September 20, 2012, the EEOC issued a Right-to-Sue letter to Ms. Porch.

### COUNT I
**(Sex Discrimination – Quid Pro Quo – AK9I)**

62.     Ms. Porch hereby incorporates all previous paragraphs.

63.     Mr. Kello submitted Ms. Porch to unwelcome sexual advances, including:

      i.   Coercing Ms. Porch into sexual intercourse upon threat of termination;

    ii. Groping Ms. Porch while on a business trip; and

    iii. Sending Ms. Porch lewd text messages.

  64. Mr. Kello subjected Ms. Porch to these advances because of her sex, a protected class under Title VII.

  65. When Ms. Porch submitted to these advances, she did so because it was an express condition of continued employment with AK9I and because she feared that refusal would negatively affect her advancement opportunities.

  66. Mr. Kello was Ms. Porch's direct supervisor when he coerced Ms. Porch into intercourse, groped her, and sent her lewd text messages.

  67. Following Ms. Porch's intercourse with Mr. Kello, and her subsequent refusal of his advances, Mr. Kello verbally abused Ms. Porch on a consistent basis during working hours.

  68. AK9I is responsible for Mr. Kello's actions and failed to remedy the situation.

  69. Mr. Kello and AK9I thereby violated 42 U.S.C. § 2000e-2.

**COUNT II**
**(Sex Discrimination – Promotion – AK9I)**

  70. Ms. Porch hereby incorporates all previous paragraphs.

  71. Ms. Porch is female, a protected class under Title VII.

  72. Ms. Porch was performing her job satisfactorily.

  73. AK9I's allegations to the contrary were false and pretextual.

  74. Ms. Porch and other female employees were not permitted to take positions with AK9I that would have required travel to Afghanistan to work with dogs there.  These positions came with a security clearance and $14,500 per month in pay.

  75. Mr. Kello and AK9I thereby violated 42 U.S.C. § 2000e-2.

10

## COUNT III
### (Hostile Work Environment Based on Sex – AK9I)

76.     Ms. Porch hereby incorporates all previous paragraphs.

77.     The conduct Ms. Porch suffered at the hands of Messrs. Kello and McDonald was unwelcome, including, but not limited to, Kello's coercion, groping, and lewd text messages and McDonald's derisive comments about women.

78.     Messrs. Kello and McDonald treated Ms. Porch as they did because she was female.

79.     Their harassment was sufficiently pervasive to establish a hostile work environment.

80.     Their conduct should be imputed to AK9I because Mr. McDonald was the most senior employee at AK9I's South Carolina location, which was Ms. Porch's normal work location, and Mr. Kello was her direct supervisor at the time of his offensive behavior.

81.     Mr. Kello and AK9I thereby violated 42 U.S.C. § 2000e-2.

## COUNT IV
### (Retaliation – Title VII – AK9I)

82.     Ms. Porch hereby incorporates all previous paragraphs.

83.     When Ms. Porch had her attorney send a letter to AK9I outlining its discriminatory behavior against her, she engaged in protected activity as defined by 42 U.S.C. § 2000e-3(a).

84.     Ms. Porch was subsequently terminated.

85.     The decision to terminate her was made, in whole or in part, based on her protected activity.

86.     AK9I thereby violated 42 U.S.C. § 2000e-3(a).

11

## COUNT V
### (Retaliation – False Claims Act – AK9I)

87.     Ms. Porch hereby incorporates all previous paragraphs.

88.     When Ms. Porch complained to Mr. McDonald about Mr. Kello's mistreatment of the dogs,, which were trained for work on U.S. government contracts, she engaged in activity protected by 31 U.S.C. § 3730(h)(1).

89.     Less than two months after that complaint, AK9I terminated Ms. Porch's employment.

90.     In the meantime, Mr. McDonald indicated to others (including Kim Parkman and Nigel Rhodes) that he intended to "get rid of" Ms. Porch.

91.     AK9I terminated Ms. Porch due to her complaints regarding Mr. Kello's mistreatment of the dogs it was training for delivery to the government.

92.     AK9I thereby violated 31 U.S.C. § 3730(h)(1).

## COUNT VI
### (Sexual Battery – Kello and AK9I)

93.     Ms. Porch hereby incorporates all previous paragraphs.

94.     When Mr. Kello coerced Ms. Porch into intercourse with him, under threat of termination, and later groped her, he inflicted unlawful violence on her person without her consent.

95.     These actions constituted battery.

96.     Because Mr. Kello took these actions within the scope of his employment and used the authority of his office and his supervision of Ms. Porch to accomplish the battery, AK9I is vicariously liable for his actions.

## COUNT VII
### (Intentional Infliction of Emotional Distress – Kello and AK9I)

97.     Ms. Porch hereby incorporates all previous paragraphs.

98.     Mr. Kello, by the batteries and lewd text messages described herein, intentionally inflicted severe emotional distress on Ms. Porch.

99.     In the alternative, Mr. Kello did so with reckless disregard for his actions' effect on Ms. Porch.

100.    In the alternative, Mr. Kello was substantially certain that such distress would result from his conduct.

101.    Mr. Kello's conduct was extreme and outrageous, exceeded all possible bounds of decency, and was atrocious and utterly intolerable in a civilized community.

102.    Mr. Kello's actions caused Ms. Porch's distress.

103.    Ms. Porch suffered emotional distress so severe that no reasonable person could be expected to endure it.

104.    These actions constituted intentional infliction of emotional distress.

105.    Because Mr. Kello took these actions within the scope of his employment and used the authority of his office and his supervision of Ms. Porch to accomplish the intentional infliction of emotional distress, AK9I is vicariously liable for his actions.

## COUNT VIII
### (Negligent Retention – AK9I)

106.    Ms. Porch hereby incorporates all previous paragraphs.

107.    AK9I, through Mr. McDonald, knew that Mr. Kello had a reputation for womanizing and was cruel to his subordinates.

108. AK9I knew or should have known that it was creating an undue risk of harm by employing Mr. Kello as a supervisor over female employees, including during interstate travel.

109. AK9I's decision nevertheless to permit Mr. Kello to supervise Ms. Porch was negligent.

110. These actions constituted negligent retention of Mr. Kello.

111. As a direct and proximate result of this decision to have Mr. Kello supervise Ms. Porch, the batteries and intentional infliction of emotional distress described herein occurred.

## COUNT IX
### (Negligent Supervision)

112. Ms. Porch hereby incorporates all previous paragraphs.

113. AK9I knew or should have known that it was creating an undue risk of harm by employing Mr. Kello as a supervisor over female employees without closely supervising his behavior.

114. AK9I's decision nevertheless to permit Mr. Kello to supervise Ms. Porch without any supervision of his actions was negligent.

115. These actions constituted negligent supervision of Mr. Kello.

116. As a direct and proximate result of this decision to have Mr. Kello supervise Ms. Porch without supervision of his own activities, particularly while Ms. Porch was traveling on behalf of AK9I, the batteries and intentional infliction of emotional distress described herein occurred.

## COUNT X
### (Unpaid Overtime – Fair Labor Standards Act – AK9I)

117. Ms. Porch hereby incorporates all previous paragraphs.

14

118. AK9I did not compensate Ms. Porch for all hours it required her to work and/or for all hours which it suffered or permitted her to work with the actual or constructive knowledge of AK9I.

119. AK9I willfully required Ms. Porch to work in excess of 40 hours during a workweek and/or "suffered or permitted" such overtime work.

120. AK9I did not pay Ms. Porch one and one-half times her regular rate of pay for all hours worked in excess of 40 in each workweek (i.e., overtime hours worked).

121. AK9I regularly and willfully violated the FLSA by not compensating Ms. Porch for all hours she was required and/or "suffered or permitted" to work.

122. AK9I willfully misinformed Ms. Porch as to her exemption status under the Fair Labor Standards Act.

123. By reason of the foregoing, Ms. Porch has been damaged and is due unpaid compensation (including unpaid overtime compensation) in such amount as may be proven at trial, an amount equal to that unpaid compensation as liquidated damages, as well as reasonable attorneys' fees, expenses, and costs under 29 U.S.C. §216(b).

WHEREFORE, the Plaintiff, Wendy Porch, demands judgment against the Defendants, jointly and severally, in the full and just amount of $2,000,000.00 (Two Million Dollars); the same amount in punitive damages; her attorney's fees and costs; pre- and post-judgment interest; and all other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues raised herein so triable.

Respectfully submitted,

John C. Cook, VSB 38310
jcook@cookcraig.com
Lee B. Warren, VSB 77446
lwarren@cookcraig.com
Broderick C. Dunn, VSB 74847
bdunn@cookcraig.com
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
*Counsel for Plaintiff*