UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WENDY PORCH,

    Plaintiff,

    v.                                                        Civil Action No. 2:12cv690

AMERICAN K-9 INTERDICTION, LLC,

    and

JOHN KELLO,

    Defendants.

**DEFENDANT AMERICAN K-9 INTERDICTION, LLC'S**
**MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant American K-9 Interdiction, LLC ("AK9I"), by counsel, moves to dismiss Counts I, III, and IV of plaintiff Wendy Porch's ("Porch") Complaint for lack of subject matter jurisdiction and Counts V, VI, VII, VIII, and IX for failure to state a claim upon which relief can be granted.[1]

### I. Introduction

Porch filed this suit against her former employer, AK9I, and former co-worker, defendant John Kello, alleging that Kello sexually harassed her during her employment, that AK9I discriminated against her based on her sex, and that AK9I failed to pay her in accordance with the

---

[1] AK9I will file an answer to the Complaint, or what remains of it, after the Court rules on this Motion. *See Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571 (E.D. Va. 2002) ("filing a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion."). *See also Saman v. LBDP, Inc.*, No. DKC 12-1083, 2012 WL 5463031, at *4 n.1 (D. Md. Nov. 7, 2012) (same); *Justice v. Dimon*, No. 3:10cv413, 2011 WL 2183146, at *2 (W.D.N.C. June 6, 2011) (same); *Harrington v. Sprint Nextel Corp.*, No. 1:08CV336, 2008 WL 2228524, at *5 (E.D. Va. May 29, 2008) (same).

Fair Labor Standards Act ("FLSA"). She also alleges that AK9I retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), when it terminated her employment on July 7, 2011.

Porch has pled ten claims: (1) *quid pro quo* sex discrimination (Count I); (2) sex discrimination – promotion (Count II); (3) hostile work environment based on sex (Count III); (4) retaliation under Title VII (Count IV); (5) retaliation under the FCA (Count V); (6) sexual battery (Count VI); (7) intentional infliction of emotional distress ("IIED") (Count VII); (8) negligent retention (Count VIII); (9) negligent supervision (Count IX); and (10) unpaid overtime under the FLSA (Count X). Porch pled each of these claims against AK9I; she pled her sexual battery (Count VI) and IIED (Count VII) claims against both Kello and AK9I.

On September 7, 2011, prior to filing her Complaint, Porch filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination ("EEOC Charge"), which is attached hereto as Exhibit 1. Because the EEOC Charge omitted the allegations that are central to Porch's *quid pro quo* sex discrimination (Count I), hostile work environment (Count III), and Title VII retaliation (Count IV) claims, she has failed to exhaust her administrative remedies with regard to those claims. The Court therefore lacks subject matter jurisdiction over Counts I, III, and IV and should dismiss them pursuant to Rule 12(b)(1).

The Court also should dismiss Porch's FCA retaliation (Count V), sexual battery (Count VI), IIED (Count VII), negligent retention (Count VIII), and negligent supervision (Count IX) claims under Rule 12(b)(6) because Porch has failed in those counts to state claims upon which relief can be granted.

## II. Argument

**A.    Legal Standard**

A Rule 12(b)(1) motion should be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(1) may rely on matters outside the pleadings.  "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id*. at 768.  The Court, therefore, may consider Porch's EEOC Charge (Exhibit 1) in ruling on AK9I's Rule 12(b)(1) motion to dismiss Counts I, III, and IV for lack of subject matter jurisdiction.

A motion to dismiss filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint.  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  If the facts alleged in the complaint, taken as true, fail to state a claim upon which relief can be granted, the Court should dismiss the complaint.  *Id*.  The United States Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do … .Factual allegations must be enough to raise a right to relief above the speculative level … .

*Twombly*, 550 U.S. at 555. (citations omitted).

**B.    The Court Should Dismiss Counts I, III, and IV for Lack of Subject Matter Jurisdiction Because Plaintiff Failed To Exhaust her Administrative Remedies with Respect to those Claims.**

Before filing suit under Title VII, a plaintiff is required to exhaust her administrative remedies. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012). The administrative exhaustion requirement is not merely "a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it serves important legislative goals:

> The purposes underlying the administrative charge requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the EEOC and the employer an opportunity to resolve the dispute.

*Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 569 (E.D. Va. 2009) (quoting 2 Barbara T. Lindemann & Paul Grossman, Employment Discrimination Law 1894 (4th ed. 2007)).

Failure to exhaust administrative remedies before filing suit deprives the court of subject matter jurisdiction. *Jones*, 551 F.3d at 300. In order for the plaintiff to have exhausted her administrative remedies, her EEOC charge must describe the conduct complained of, and those allegations must correspond to the allegations in the plaintiff's civil suit. *Jones*, 551 F.3d at 300; *Chacko*, 429 F.3d at 508-09. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Where "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred" for failure to exhaust administrative remedies.

*Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995); *see also Johnson*, 682 F. Supp. 2d at 570.

A Title VII complaint "may not present entirely new factual bases" not included in the EEOC charge. *Bryan v. Prince George's County, Md.*, CIV.A. DKC 10-2452, 2011 WL 2650759 (D. Md. July 5, 2011) *aff'd*, 484 F. App'x 775 (4th Cir. 2012). For example, in *Tillbery v. Kent Island Yacht Club, Inc.*, 461 F. App'x 288, 290 (4th Cir. 2012), the Fourth Circuit affirmed dismissal of a Title VII claim for failure to exhaust administrative remedies because the plaintiff's allegations were not in her EEOC Charge; by failing to include them in her EEOC Charge, the plaintiff had denied "the EEOC the opportunity to investigate and mediate the claim." *Id.* at 290.

Porch's allegations of sexual harassment and Title VII retaliation in her Complaint far exceed the allegations in her EEOC Charge. In her EEOC Charge, she alleges that Kello called her a "fucking cunt," that he told her she would not be deployed because of her sex, that another AK9I employee, Richard McDonald, told her she was good only for "lying on [her] back with [her] legs in the air," that Kello had groped her and grabbed her crotch, that she received lewd and sexually explicit text messages, and that she was fired in retaliation for her May 2011 and June 21, 2011 complaints of sexual harassment. Ex. 1.

Porch's EEOC Charge allegations comprise only a small fraction of the sexual harassment and retaliation allegations in her Complaint. Whereas Porch did not even hint in her EEOC Charge that she ever had sex with Kello, she alleges for the first time in her Complaint that Kello coerced her into having sex with him by threatening that if she refused, she would be denied job opportunities and be fired. Compl. ¶ 24. Her brand new allegations about sexual intercourse, *id*. ¶¶ 24, 25, 29, and 33, are the fulcrum of her *quid pro quo* sexual harassment claim (Count I) and her hostile work environment claim (Count III). *Id.* ¶¶ 62-69, 76-81. Several of Porch's other

allegations in support of her hostile work environment claim (Count III) are likewise absent from her EEOC Charge.  *See id.* ¶¶ 19, 22, 23, 26, 27, 32, 34, 46, 48.  Two of the alleged harassers discussed in her Complaint—Daniel Barnett and Chad Radt—are not mentioned at all in her EEOC Charge.  *Id*. ¶¶ 22, 46.

Porch's Title VII retaliation claim (Count IV) is also based on entirely new allegations.  Her retaliation allegations in paragraphs 36, 49, 50, 53, and 54 of her Complaint appear nowhere in her EEOC Charge, notwithstanding that they allegedly occurred before she filed her EEOC Charge.  Most significantly, her EEOC Charge omitted the very oppositional activity that forms the basis for her Title VII retaliation charge:  her attorney's June 28, 2011 letter.  *Id*. ¶ 53.  In her EEOC Charge, she alleges she was terminated in retaliation for her complaints to management in May 2011 and to human resources on June 21, 2011, but in her Complaint she alleges that she was terminated in retaliation for her attorney's June 28, 2011 letter to AK9I.  *Id*.

The discrepancy between her EEOC Charge and Complaint cannot be ignored.  Her new allegations—especially those regarding sexual intercourse and her attorney's June 28, 2011 letter—are wholly distinct from those in her EEOC Charge.  They are not reasonably related to the EEOC Charge and would not "naturally … arise[] from an investigation" of it.  *Evans,* 80 F.3d at 963.  Nor can Porch's failure to include these pivotal allegations in her EEOC Charge be excused as a lay person's mistake.  Although it is unclear who drafted the EEOC Charge, the Complaint reveals that Porch had legal counsel at the time.  Compl. ¶ 53.

By omitting from her EEOC Charge the allegations that are central to her Complaint, Porch undermined the EEOC process.  The EEOC could not investigate allegations that it never received.  AK9I never received notice of these allegations before this suit was filed.  In treating the EEOC administrative process as a mere formality to rush through on her way to the

courthouse, Porch has blocked the very purposes of the EEOC administrative process: notice to the employer, narrowing the issues for speedier and more effective adjudication, and an opportunity to resolve the dispute before litigation. *See Johnson*, 682 F. Supp. 2d at 569.

Porch's failure to include in her EEOC Charge the allegations that are critical to her *quid pro quo* harassment (Count I), hostile work environment harassment (Count II), and Title VII retaliation (Count IV) claims deprives the Court of subject matter jurisdiction over those claims. The Court should dismiss them pursuant to Rule 12(b)(1).

**C.     Count V of the Complaint Fails To State a Claim under the FCA's "Whistleblower" Protection Statute.**

**1. Elements of a Retaliation Claim Under the FCA's Whistleblower Provision**

The Complaint fails to allege facts to state a plausible claim for retaliation under the FCA. The FCA is "designed to discourage fraud against the federal government." *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 342 (4th Cir. 2010). It imposes civil liability on a person who knowingly commits one or more of the following acts: (1) presenting a false claim to the government for payment or approval, (2) making or using a false record that is material to a false claim, (3) delivering less than all of government money or property, (4) delivering a receipt for government property knowing that the receipt is false, (5) buying public property from a government officer who does not have authority to sell such property, (6) making a false record that is material to an obligation to pay the government, or (7) conspiring to commit any of the above. 31 U.S.C. § 3729(a)(1). "The FCA's scope is commensurate with its purpose. It covers only fraudulent claims against the United States; without fraud, there can be no FCA action." *Mann*, 630 F.3d at 345-46.

To aid in its enforcement, the FCA permits a private party to bring an action for an FCA violation in the name of the United States (hereinafter referred to as a "*qui tam*" action or suit).

31 U.S.C. § 3730(b); *Mann*, 630 F.3d at 343. To further promote enforcement of the FCA, Congress added a "whistleblower" provision to protect employees who may be considering exposing fraud from retaliatory acts. 31 U.S.C. § 3730(h); *Mann*, 630 F.3d at 343. The "whistleblower" provision provides:

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . ***in furtherance of an action under this section*** or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1) (emphasis added).

In order to sustain a cause of action under 31 U.S.C. § 3730(h)(1), Porch must prove that: (1) she took acts in furtherance of a *qui tam* suit; (2) AK9I knew of these acts; and (3) AK9I took adverse action against her as a result of these acts. *Mann*, 630 F.3d at 343 (citing *Zahodnick v. Int'l Bus. Machs. Corp*, 135 F.3d 911, 914 (4th Cir. 1997)).

The first prong, referred to as the "protected activity" prong, encompasses "measures taken 'in furtherance of an action filed or to be filed'" under the *qui tam* provisions of the FCA. *Id.* (quoting 31 U.S.C. § 3730(h)) (emphasis omitted). An employee engages in protected activity "when an employee's opposition to fraud takes place in a context where 'litigation is a distinct possibility, when the conduct reasonably could lead to a viable [FCA] action, or when litigation is a reasonable possibility.'" *Id.* at 344 (quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999)). The protected activity must "relate to company conduct that involves an objectively reasonable possibility of an FCA action." *Id.*

    2. **The Complaint Fails To Allege Facts To Plausibly Satisfy the "Protected Activity" Prong.**

        a. **The Complaint Does Not Allege Any False or Fraudulent Conduct by AK9I or its Employees.**

8

With regard to Count V, Porch merely alleges that she informed McDonald that Kello "neglected to properly feed, water, and air the dogs properly," that Kello "had picked dogs up by their heads and shaken them," and that Kello "threw one dog against its crate for misbehaving." Compl. ¶ 44. Porch avers that her act of "complain[ing] to Mr. McDonald about Mr. Kello's mistreatment of the dogs, which were trained to work on U.S. government contracts" constitutes "an activity protected by 31 U.S.C. § 3730(h)(1)." *Id.* ¶ 88.

The Complaint fails to include even scant allegations of anything amounting to fraud against the government. Porch does not allege the existence of any false record or false claim for payment with regard to AK9I's government contracts. Porch's allegations are best characterized not as opposing fraud, but as voicing disagreement with Kello's handling of dogs. Even if Kello's alleged handling of dogs amounts to non-compliance with government standards or regulations, it could not reasonably lead to a viable FCA action. *Mann v. Heckler & Koch Def. Inc.*, 639 F. Supp. 2d 619, 627 (E.D. Va. 2009), *aff'd*, 630 F.3d 338 (4th Cir. 2010) ("One who simply . . . investigates 'the employer's non-compliance with federal or state regulations does not [engage in protected activity]' "); *see also Eberhardt*, 167 F.3d at 868 (pointing out that an investigation into an employer's non-compliance with federal or state regulations does not fall under the FCA) (citing *Shekoyan v. Sibley Intern.*, 409 F.3d 414, 423 (D.C. Cir. 2005)). Kello may or may not have handled dogs in accordance with company policy, but his alleged conduct falls well short of fraud. Undeniably, "without fraud, there can be no FCA action." *Mann*, 630 F.3d at 345-46. Thus, the Complaint fails to allege facts to plausibly show that Porch engaged in a "protected activity" under the FCA.

  **b. The Complaint Does Not Allege that Porch Took any Acts in Furtherance of a *Qui Tam* Action.**

Even if, assuming *arguendo*, the actions of Kello and McDonald somehow did amount to fraud, Porch fails to allege that she engaged in *any* measures "in furtherance of" a *qui tam* action. Though an employee need not actually file a *qui tam* suit to engage in protected activity, the plaintiff must at least be investigating matters that could reasonably lead to a viable FCA action. *Mann*, 630 F.3d at 344.

Porch has not alleged that she investigated, initiated, testified for, or assisted in the filing of a *qui tam* action during her employment with AK9I. Moreover, Porch does not allege that she informed anyone that she was pursuing or even contemplating a *qui tam* action. Porch merely alleges that she reported her concerns of Kello's handling of dogs to a supervisor. Reporting a concern to a supervisor, without more, does not establish that an employee was acting in furtherance of a *qui tam* action. *Zahodnick*, 135 F.3d at 914 ("Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that [Plaintiff] was acting 'in furtherance of' a *qui tam* action"); *Shekoyan*, 409 F.3d at 423 (holding that an employee does not engaged in protected activity by merely informing a supervisor of the problem).

Thus, even if one assumes *arguendo* that the actions of Kello and McDonald somehow constituted fraud, the Complaint still fails to allege facts to show that Porch engaged in a protected activity (*i.e.*, took actions in furtherance of a *qui tam* suit). For the foregoing reasons, Count V of the Complaint fails to state a plausible claim for relief under 31 U.S.C. § 3730(h)(1), and it should be dismissed.

**D.     Counts VI, VII, VIII, and IX Should Be Dismissed Because Such Claims are Preempted by the South Carolina Workers' Compensation Act.**

   **1. The Court Should Apply South Carolina Law to Plaintiff's Tort Claims.**

A federal court sitting in Virginia and exercising supplemental jurisdiction applies Virginia's choice of law rules. *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 727 (E.D. Va. 2012). Under Virginia choice of law rules, this Court adheres to the *lex loci delicti*, or place of the wrong, standard that is the settled rule in Virginia. *Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, CIV.A.3:05CV355, 2006 WL 5908727 (E.D. Va. Feb. 10, 2006) (citing *Jones v. R.S. Jones & Assocs., Inc.* 246 Va. 3, 431 S.E.2d 33, 34 (1993)).

Porch's allegations with regard to Counts VI, VII, VIII, and IX are interrelated and center on acts alleged to have occurred in South Carolina. In Count VI, Porch claims sexual battery based on Kello allegedly coercing her into having sexual intercourse with him and groping her in South Carolina.[2] Compl. ¶¶ 24, 94. In Count VII, Porch claims that Kello intentionally inflicted emotional distress on her through his alleged "batteries and lewd text messages;" although Porch does not state where she was when she allegedly received the text messages or her alleged emotional distress manifested, she alleges the batteries occurred in South Carolina. *Id*. ¶¶ 24, 98. Counts VIII and IX claim that AK9I negligently retained and supervised Kello; AK9I's retention and supervision of Kello was primarily in South Carolina, which was Porch's primary work location. *Id*. ¶¶ 19, 59, 111, 116. Thus, South Carolina is the "place of the wrong" for Counts VI, VII, VIII, and IX. Even if, assuming *arguendo*, Porch suffered wrongs elsewhere, South Carolina law still would apply because she alleges she suffered the greatest harm there, her primary work location. *See Hatfill v. Foster*, 415 F. Supp. 2d 353, 364-65 (S.D.N.Y. 2006) (holding that, where a plaintiff is allegedly injured in several states, Virginia choice of law rules would apply the law of the place of greatest harm to the plaintiff).

Accordingly, South Carolina law applies to Counts VI, VII, VIII, and IX.

---

[2] Porch also claims that Kello's alleged groping of her during a business trip originating and terminating in South Carolina constituted a battery. Compl. ¶¶ 34, 41, 94.

2. **Claims for Battery, IIED, Negligent Retention, and Negligent Supervision are Preempted by the South Carolina Workers' Compensation Act.**

Porch's claims against AK9I for sexual battery (Count VI), IIED (Count VII), negligent retention (Count VIII), and negligent supervision (IX) are preempted by the South Carolina Workers' Compensation Act (the "Act"). S.C. Code Ann. § 42-1-540.[3] South Carolina courts have consistently held that claims for battery, IIED, negligent retention, and negligent supervision are preempted by the Act. *See Todd v. Fed. Express Corp.*, No. 4:09-cv-1501, 2010 WL 1294065, at *2 (D.S.C. Feb. 2, 2010) ("It is well settled that both battery claims and claims of intentional infliction of emotional distress or outrage are preempted by the Act when they arise out of and in the course of employment."); *Lasher v. Day & Zimmerman Int'l, Inc.*, 516 F. Supp. 2d 565 (D.S.C. 2007) (dismissing plaintiff's claims for IIED and negligent supervision/retention because such claims allege personal injury arising out of and in the course of the employment, and are preempted by the Act); *Sabb v. S.C. State Univ.*, 350 S.C. 416, 567 S.E.2d 231, 234 (2002) (holding that a claim for negligent supervision is preempted by the Act); *Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538 (1992) (holding that claims for IIED and battery are preempted by the Act); *Dickert v. Metro. Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700, 701 (S.C. 1993) (holding that claims for battery, IIED, and negligent selection, retention,

---

[3] The Act states in relevant part:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540.

and supervision by an employee against her employer are pre-empted by the Act and must be dismissed).

Under South Carolina law, the Act provides the exclusive remedy for Porch's work-related injuries. Accordingly, the Court should dismiss Counts VI, VII, VIII, and IX of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### E. Even if Count VII is Not Preempted, It Should Be Dismissed Because Porch Has Failed to State a Claim for IIED.

Porch's IIED claim, if not preempted by the Act, fails under South Carolina law. To maintain a claim for IIED in South Carolina, the plaintiff must establish that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by plaintiff was so severe that no reasonable [wo]man could be expected to endure it.

*Todd v. Fed. Express Corp.*, CA 4:09-1501-TLW-KDW, 2012 WL 4006595 (D.S.C. July 16, 2012) *report and recommendation adopted in part, rejected in part,* 4:09-CV-1501-TLW-KDW, 2012 WL 4006466 (D.S.C. Sept. 12, 2012) (quoting *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 650 S.E.2d 68, 70 (S.C. 2007)). South Carolina requires a "heightened burden of proof" for the second and fourth elements of IIED. *Hansson*, 374 S.C. at 356, 650 S.E.2d at 71. In circumstances "where physical harm is lacking, the courts should look initially for more in the way of extreme outrage as an assurance that the mental disturbance claimed is not fictitious." *Ford v. Hutson*, 276 S.C. 157, 161, 276 S.E.2d 776, 778 (1981).

Porch has failed to allege facts sufficient to make a plausible claim that she suffered severe emotional distress. Instead of alleging any specific facts of distress suffered, she merely alleges that she "suffered emotional distress so severe that no reasonable person could be

expected to endure it." Compl. ¶ 103. This conclusory allegation is insufficient to state a plausible claim of IIED. In *Hansson*, the South Carolina Supreme Court rejected an IIED claim notwithstanding plaintiff's allegations that he suffered sleeplessness and teeth grinding necessitating trips to the dentist. 374 S.C. at 359, 650 S.E.2d at 72. The court explained that such evidence was not enough "to show that his resulting emotional distress was 'severe.'" *Id.* at 359-60, 650 S.E.2d at 72. *See also AJG Holdings LLC v. Dunn*, 392 S.C. 160, 169-70, 708 S.E.2d 218, 224 (holding that plaintiffs' symptoms of high blood pressure, digestive problems, nervousness, and weight loss were not sufficient for a claim of IIED).

Even if the Court were to apply the law of Virginia, where Porch alleges AK9I is headquartered and Kello resides, Compl. ¶¶ 6-7, Porch's IIED claim would fail. To ward against "damages for injuries to … feelings," an essential element of a claim of IIED in Virginia is a "showing of severe emotional distress, as opposed to generalized emotional distress … ." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 269 (4th Cir. 2001) (affirming dismissal of a claim of IIED because the plaintiff's allegation of severe emotional distress did "not reach the high threshold of severe and specific injury required to make out this claim."). Nonspecific allegations of emotional distress are insufficient. *Russo v. White*, 241 Va. 23, 400 S.E.2d 160, 161-63 (1991) (rejecting a claim of IIED notwithstanding the plaintiff's allegations of "nervousness, sleeplessness, stress and its physical symptoms, withdrawal from activities ... and lack of concentration" because "the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it."). Thus, as under South Carolina law, Porch's barebones allegation that she "suffered emotional distress so severe that no reasonable person can be expected to endure it," Compl. ¶ 103, is insufficient under Virginia law. *Barrett*, 240 F.3d at 269.

Because Porch's allegations do not "raise a right to relief above the speculative level," *Iqbal*, 129 S.Ct. at 1949, she has failed to state a plausible claim for IIED. The Court should dismiss Count VII.

**F.      Even if Count VIII is Not Preempted by the South Carolina Workers' Compensation Act, the Court Should Dismiss it Because Porch Has Failed to State a Claim for Negligent Retention.**

Under South Carolina law, an employer may be liable for negligent retention only if "the employer knew the offending employee was 'in the habit of misconducting [himself] in a manner dangerous to others.'" *Doe v. ATC, Inc.*, 367 S.C. 199, 206, 624 S.E.2d 447, 450-51 (Ct. App. 2005) (quoting Restatement (2d) of Torts § 317 cmt. c). The plaintiff must "demonstrate some propensity, proclivity, or course of conduct sufficient to put the employer on notice of the possible danger to third parties." *Id.* In order for the employer to be on notice of the possible danger, the prior misconduct must have a sufficient nexus to the ultimate harm that is the subject of the claim. *Id.* at 207, 624 S.E.2d at 451. Similarly, Virginia law requires a showing that the plaintiff was harmed resulting from the employer's negligence in retaining an employee who the employer knew or should have known was dangerous and likely to harm others. *Se. Apartments Mgmt., Inc. v. Jackman*, 257 Va. 256, 260-61, 513 S.E.2d 395, 397 (1999) (holding that the employer's alleged knowledge that its employee commented on the attractiveness of female tenants and was regarded by his coworkers as "obnoxious" did not give the employer reason to know that he was dangerous). Because Porch does not allege any facts suggesting that AK9I was on notice that Kello posed any danger, she has failed to state a claim for negligent retention under either South Carolina or Virginia law.

In *ATC, Inc.*, the South Carolina Court of Appeals dismissed a claim of negligent retention because the prior alleged misconduct, lacking a sufficient nexus to the sexual assault

15

that was the subject of the claim, did not put the employer on notice that the employee was dangerous. 367 S.C. at 202, 624 S.E.2d at 448. In that case, the mother of a disabled woman sued the employer for negligent retention after its employee repeatedly, over several months, touched the daughter's legs, kissed her, and made inappropriate sexual comments to her. *Id.* The employer had received an earlier report that the same employee had grabbed another woman, tried to force her to kiss him, and made inappropriate sexual comments, but the court held that this report did not give the employer reason to know the employee was dangerous. 367 S.C. at 203, 624 S.E.2d at 449. "While it is true that both incidents may generally be described as sexual in nature, the totality of the prior incident is a far cry from the reprehensible, persistent pattern of abuse against [the plaintiff's daughter]." *Id.* at 207-08, 624 S.E.2d at 451.

Porch has not alleged any prior misconduct by Kello that would put AK9I on notice that he was dangerous. In support of her negligent retention claim, she alleges only that "AK9I, through Mr. McDonald, knew that Mr. Kello had a reputation for womanizing and was cruel to his subordinates." Compl. ¶ 107. The Complaint leaves the parties and the Court guessing as to what the terms "womanizing" and "cruel" mean in this context and lacks any indication as to what AK9I may have known about Kello's alleged cruelty and womanizing. The only possible factual allegation regarding Kello's alleged "reputation as a womanizer" is a statement of triple hearsay, in which Porch alleges that a co-worker said something to McDonald, who allegedly repeated it to Kello, who allegedly repeated it to Porch. *Id.* ¶ 19. Even assuming that AK9I did know Kello to be a womanizer and cruel, such knowledge would not have given AK9I any reason to suspect that he was likely to commit the sexual battery or the other conduct Porch alleges. There is no nexus between a vague reputation for "womanizing" and cruelty and the

harm Porch claims to have suffered. Indeed, the term "womanizer" connotes voluntary sexual activity, not sexual assault or rape.

Porch's formulaic recitation of conclusory allegations does not make her negligent retention claim plausible. Because she has failed to plead facts sufficient to state a plausible claim for relief, the Court should dismiss Count VIII pursuant to Rule 12(b)(6).

### G. Even if it is Not Preempted by the South Carolina Workers' Compensation Act, the Court Should Dismiss Count IX Because Porch Has Failed to State a Claim of Negligent Supervision.

While South Carolina, unlike Virginia,[4] does recognize a cause of action for negligent supervision, the plaintiff must show that the employee intentionally harmed her while (1) the employee is on the employer's premises or is where he is privileged to enter only because of his employment, or is using the employer's chattel, and (2) the employer knows or has reason to know that it has the ability to control the employee, and (3) the employer knows or has reason to know of the necessity and opportunity for exercising such control. *Degenhart v. Knights of Columbus*, 309 S.C. 114, 116-17, 420 S.E.2d 495, 496 (1992) (citing Restatement (2d) of Torts § 317 (1965)). Porch has not alleged any facts required for a *prima facie* showing of negligent supervision under South Carolina law.

As with negligent retention, a claim of negligent supervision requires that the employer know or have reason to know that the employee posed a danger to others, such that the employer knows or should know of the necessity to control the employee. *See Brockington v. Pee Dee Mental Health Ctr.*, 315 S.C. 214, 433 S.E.2d 16 (Ct. App. 1993) (dismissing a claim of negligent supervision because there was no evidence that the employer knew or should have

---

[4] There is no cause of action in Virginia for negligent supervision. *Thompson v. Town of Front Royal*, 117 F. Supp. 2d 522, 531 (W.D. Va. 2000); *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988).

known of the necessity to exercise control over an employee when he allegedly sexually assaulted a patient); *cf. Doe v. Greenville Hospital Sys.*, 323 S.C. 33, 448 S.E.2d 564 (Ct. App. 1994) (holding that the employer knew or should have known of the necessity for controlling the employee at the time he sexually assaulted a minor because the employer knew of this employee's earlier sexual conduct with the same minor). In *Hoskins v. King*, 676 F. Supp. 2d 441 (D.S.C. 2009), the plaintiff sued the employer for negligent supervision when its employee, driving while talking on her cell phone, caused a fatal car accident. The court dismissed the claim, holding that the employer had no reason to know that the employee posed an undue risk of harm to the public, notwithstanding that the employer knew of the employee's previous speeding tickets and that she had caused a previous, nonfatal car accident, also while talking on her cell phone. *Id.* at 447. Even though the employer should have known that this employee "was not the best driver," her driving record did "not rise to a level at which [the employer] would be put on notice that she presented an unreasonable risk of harm to the public" and did not "foreshadow the event that brought this case before this court." *Id.*

Assuming, *arguendo*, that Porch has alleged sufficient facts for the first element of negligent supervision, she has utterly failed to allege any facts suggesting that AK9I knew or had reason to know that it had the ability to control Kello, nor that it knew or should have known of the necessity and opportunity for doing so. Porch alleges only that "AK9I knew or should have known that it was creating an undue risk of harm by employing Mr. Kello as a supervisor over female employees without closely supervising his behavior." Compl. ¶ 113. Porch does not allege any facts supporting this conclusion. The only allegation possibly related to this conclusion is the allegation in Count VIII, discussed above, that AK9I "knew that Mr. Kello had a reputation for womanizing and was cruel to his subordinates." *Id.* ¶ 107. This vague and

conclusory allegation is no more support for Porch's negligent supervision claim than it is for her negligent retention claim.

Because Porch has failed to state a claim for negligent supervision under South Carolina law, and because there is no such cause of action under Virginia law, the Court should dismiss Count IX.

### III. Conclusion

The Court should dismiss Porch's *quid pro quo* sex discrimination (Count I), hostile work environment (Count III), and Title VII retaliation (Count IV) claims for lack of subject matter jurisdiction and her FCA retaliation (Count V), sexual battery (Count VI), IIED (Count VII), negligent retention (Count VIII), and negligent supervision (Count IX) claims for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/Anne G. Bibeau
Arlene F. Klinedinst, Esq. (VSB No. 31101)
Anne G. Bibeau, Esq. (VSB No. 41488)
Michael P. Giordano, Esq. (VSB No. 82139)
Vandeventer Black LLP
101 W. Main Street, Ste. 500
Norfolk, VA  23510
Tel. 757-446-8600
Fax 757-446-8670
aklinedinst@vanblk.com
abibeau@vanblk.com
mgiordano@vanblk.com
*Counsel for Defendant American K-9 Interdiction, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Cook, Esq.
Lee B. Warren, Esq.
Broderick C. Dunn, Esq.
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA  22030
jcook@cookcraig.com
lwarren@cookcraig.com
bdunn@cookcraig.com
*Counsel for Plaintiff*

and that I have served the foregoing via U.S. Mail to:

Mr. John Kello
27540 Walters Highway
Carrsville, VA  23315-4415


/s/Anne G. Bibeau
Anne G. Bibeau, Esq. (VSB No. 41488)
Vandeventer Black LLP
101 W. Main Street, Ste. 500
Norfolk, VA  23510
Tel. 757-446-8600
Fax 757-446-8670
abibeau@vanblk.com
*Counsel for Defendant American K-9 Interdiction, LLC*

4838-5245-8770, v.  3