IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WENDY PORCH :
:
Plaintiff, :
:
v. : Civil Action No. 2:12cv690
:
AMERICAN K-9 INTERDICTION, LLC, et al. :
:
Defendants. :

**PLAINTIFF'S OPPOSITION TO DEFENDANT AK9I'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Wendy Porch, by and through undersigned counsel, and hereby opposes defendant American K-9 Interdiction, LLC's ("AK9I") Motion to Dismiss. In further support thereof, Ms. Porch states the following:

**STATEMENT OF FACTS RELEVANT TO MOTION TO DISMISS**

Richard McDonald of AK9I hired Ms. Porch as a dog trainer on or about November 29, 2010. (Compl. ¶ 8.) Ms. Porch was to train dogs in the detection of improvised explosive devices, pursuant to a government contract. (Compl. ¶ 9.) On or about January 28, 2011, Ms. Porch was assigned to a training team whose Team Leader/Supervisor was Mr. Kello. (Compl. ¶ 18.) Soon after Ms. Porch began working for AK9I, she began to experience harassment at the hands of her supervisors. (Compl. ¶ 20.) On or about February 14, 2011, Mr. McDonald said to Ms. Porch, "Isn't that right, Wendy? Aren't women only good for one thing? You are only good for lying on your back with your legs up in the air." (Compl. ¶ 21.) On or about February 21, 2011, while taking a break from training dogs, Mr. Kello grabbed Ms. Porch's thigh, then had Daniel Barnett, another trainer, do the same. She told both of them to stop and respect her personal space. (Compl. ¶ 22.) This event was reported to Mr. McDonald. He told Ms. Porch

that AK9I would lose the government contract if the Marine Corps learned that the trainers were behaving that way during training. (Compl. ¶ 23.)

On or about February 26, 2011, following a going-away party for an AK9I employee, Mr. Kello attempted to seduce Ms. Porch at her company housing in South Carolina. She refused his advances three times. Mr. Kello then told Ms. Porch that Mr. Riddle was his friend and decided which employees could go to Mojave Viper, a large United States Marine Corps event in California, for EMV training; that if she did not get EMV training, she would not be able to go to Afghanistan for AK9I, a position that would have included a security clearance and far better pay; and that she should not "piss him off" because that would anger Mr. Riddle, Mr. Riddle would go to Mr. McDonald, and Mr. McDonald would fire Ms. Porch. Solely because of these threats and insinuations, Ms. Porch had sexual intercourse with Mr. Kello. (Compl. ¶ 24.) On or about March 1, 2011, Mr. McDonald told Ms. Porch that he had placed a bet on whether she and Mr. Kello would sleep together and told Mr. Kello that he made Mr. McDonald lose the bet because Mr. Kello slept with Ms. Porch. (Compl. ¶ 25.)

Mr. Kello's behavior continued after Ms. Porch left for Yuma, Arizona and Twenty Nine Palms, California, along with other AK9I employees, including Mr. Kello, to train dogs. Prior to leaving on this trip, Mr. Kello told Ms. Porch that Mr. McDonald had warned Mr. Kello not to sleep with Ms. Porch. (Compl. ¶ 29.) On or about March 22, 2011, while the AK9I employees were in Yuma for training, Mr. Kello came into Ms. Porch's hotel room and fondled her from behind. She told him to stop. (Compl. ¶ 34.) On or about April 29, 2011, Mr. Kello sent text messages to Ms. Porch saying, "Well if you're ready, how do you want it then? … Cock sandwich is today's special." (Compl. ¶ 38.) On or about May 2, 2011, Mr. Kello sent a text message to Ms. Porch saying, "I'm gonna bring your food you want me to eat that pussy."

(Compl. ¶ 40.) The following day, after the AK9I employees had checked into a hotel, Ms. Porch was sitting in the back seat of the AK9I truck. Mr. Kello came to the door and grabbed Ms. Porch's crotch and butt. She told him to leave her alone and struck him. (Compl. ¶ 41.) The same day, Mr. Kello sent her another message saying, "We should fuck like rabbits to celebrate" the death of Osama bin Laden. (Compl. ¶ 42.) On that same day, while the AK9I employees had stopped at a gas station, Mr. Kello approached Ms. Porch from behind and pressed his crotch against her backside. She told him to stop. (Compl. ¶ 42.) Mr. Kello also sent a multimedia text message to Ms. Porch with a picture of his crotch and the words, "I'm waiting." (Compl. ¶ 42.)

On or about May 13, 2011, Ms. Porch, frustrated by her treatment, asked Mr. McDonald whether he wanted her to leave the company. He said no and that she was an excellent employee who did "what was asked of her and then some." (Compl. ¶ 43.) In the same conversation, Ms. Porch informed Mr. McDonald that Mr. Kello had, while in California, neglected to properly feed, water, and air the dogs; that he had picked dogs up by their heads and shaken them; and that he threw one dog against its crate for misbehaving. Mr. McDonald said that he had done some of the same things. (Compl. ¶ 44.) Ms. Porch also threatened to file harassment charges against Chad Radt. (Compl. ¶ 46.)

On July 7, 2011, Ms. Porch received a letter from Debbie Rowley, of AK9I's human resources department, stating that Ms. Porch had been terminated for not calling in properly to report her absences. (Compl. ¶ 57.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (1970). To survive dismissal, the complaint

must contain "enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 570 (2007)). Moreover, under the demanding strictures of a Rule 12(b)(6) motion, the plaintiff's complaint is to be construed in a "light most favorable to the plaintiff." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 563 (2007).

## ARGUMENT

### I. Ms. Porch Exhausted Her Administrative Remedies

A plaintiff suing under Title VII of the Civil Rights Act of 1964 must first have exhausted her administrative remedies by filing a charge with the EEOC. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Id.* The plaintiff can sue based on any facts in the charge or which "can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir. 2000). Judge Conrad of this Division recently analyzed in detail the Fourth Circuit's jurisprudence on exhaustion of administrative remedies in the Title VII context. *See Coles v. Carilion Clinic*, --- F.Supp.2d ---, Civil Action No. 7:11-cv-00555, 2012 WL 2884917, at *4 (E.D. Va. July 13, 2012). Judge Conrad recognized one type of exhaustion case in which the EEOC charge presents, for example, a sex discrimination claim based on certain facts and the

complaint presents a sex discrimination claim based on different facts.[1] *See id.* Such cases fall under two categories in the Fourth Circuit:

> (1) both the EEOC charge and the complaint allege the same type of claim, but the central factual allegations supporting the claim differ as between the charge and the complaint; and (2) both the EEOC charge and the complaint allege the same type of claim, and the factual allegations supporting the claim, although different as between the charge and the complaint, are nonetheless sufficient to afford adequate notice to the employer of the factual basis for the claim.

*Id.* In the former category, the Fourth Circuit will find that the plaintiff has failed to exhaust her administrative remedies. *See Chacko v. Patuxent Institution*, 429 F.3d 505, 512-13 (4th Cir. 2005) (cited by *Coles* as representative). In the latter, the Fourth Circuit will find that the plaintiff *has* exhausted her remedies. *See Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 594-95 (4th Cir. 2012) (cited by *Coles* as representative). In such a case, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same…" *Id.* at 595 (quoting *Smith*, 202 F.3d at 247). The *Sydnor* analysis considers whether the charge and complaint "involved the same place of work and the same actor" and "focused on the same type of discrimination" regardless of whether the *form* of discrimination changed between the charge and complaint. *Id.* In *Sydnor*, the Fourth Circuit held that the plaintiff, suing under the Americans with Disabilities Act, had exhausted her administrative remedies by mentioning light-duty work in the charge even though she asked, at summary judgment, for full-duty work with the use of a wheelchair. *Id.* at 594-95. In *Smith*, the plaintiff's charge alleged that management retaliated against her by "chastising her and threatening to terminate her employment," but the complaint alleged that management retaliated against her by forcing her to work on the harasser's floor and not offering her any alternative

[1] The other type, inapplicable here, describes an EEOC charge that deals with, for example, sex discrimination and a complaint that deals with, for example, race discrimination. *See id.* In those cases, the plaintiff has failed to exhaust her administrative remedies. *Id.*

positions. *Smith*, 202 F.3d at 248. Because the underlying protected conduct was the same in the charge and the complaint, the Fourth Circuit held that Smith had exhausted her administrative remedies. *Id.*

**A. Ms. Porch's EEOC Charge Satisfies the Fourth Circuit's Standard for Exhaustion Relating to Her Harassment at Mr. Kello's Hands**

This case is no different from *Sydnor* and its progeny. Ms. Porch's charge does not describe Mr. Kello's coercing her into having sex with him, but it states that he groped her and sent her lewd text messages. (Exh. 1.) Her charge and complaint, particularly Count I, both identify Mr. Kello as the offending manager and describe conduct which is obviously sexual harassment illegal under Title VII. This is a case of a new form of discrimination, as in *Sydnor*, not a new type of discrimination, a new discriminator, or a new place of work. One eminently reasonable question from the EEOC investigator would have revealed the sexual coercion: "Did Mr. Kello do anything else inappropriate to you?" The Fourth Circuit clearly expects that the EEOC will conduct a broad investigation of a charge. As *Smith* reveals, a charge of one type of harassment will reasonably lead the EEOC to ask whether the harasser did anything else. This expectation reflects both Congress's preference for resolving discrimination claims outside the courts and the EEOC's expertise in doing so.

In fact, the Fourth Circuit has held that a claim of "harassment" should place *the employer* on notice of possible sexual harassment. *Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011). There, Okoli complained of "unethical and unprofessional business characteristics, e.g., *harassment*, degrading and dehumanizing yelling and demanding, disrespect, mocking and gossiping about other colleagues (anyone in the City government) and lack or disregard for integrity." *Id.* The Fourth Circuit held that "[t]he City surely should have know that Okoli's complaints of 'harassment' likely encompassed sexual harassment." *Id.* If a

complaint of "harassment" triggers an *employer's* obligation to investigate sexual harassment, surely it would lead the EEOC to make the same investigation.

### B. Ms. Porch's EEOC Charge Satisfies the Fourth Circuit's Standard for Exhaustion Relating to Her Hostile Work Environment Claims

Ms. Porch's hostile work environment claim, Count III, likewise survives; the charge specifically mentions all of the behavior described in Paragraph 77. *Sydnor* simply does not require a charging party to specify, in the charge, every single action that contributed to a hostile work environment. *See also Kidwell v. Sheetz, Inc.*, 982 F.Supp. 1177, 1184 (W.D. Va. 1997). In *Kidwell*, the employer argued that the plaintiff had failed to exhaust her administrative because her charge did not identify an incident where she was required to clean up after her manager after he had masturbated in a company toilet. *Id.* The Western District disagreed and held that it was enough for her charge to allege "that she was subject to hostile work environment sexual harassment…" *Id.* Here, the fact that Daniel Barnett and Chad Radt do not appear in the charge does not affect the *Sydnor* analysis, not least because Messrs. Kello and McDonald's conduct alone would constitute a hostile work environment. The Complaint's obvious gravamen is Ms. Porch's treatment at the hands of Messrs. Kello and McDonald. The fact that she references other behavior by other employees does not single-handedly divest this Court of jurisdiction. Finally, even if this Court decides to dismiss Count I's *quid pro quo* allegations, the facts underlying Count I still support Ms. Porch's hostile work environment claim. *Quid pro quo* propositions can form or contribute to a hostile work environment under Title VII. *See Glover v. Oppleman*, 178 F.Supp.2d 622, 638 (W.D. Va. 2001) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 751-54 (1998)); *Kidwell*, 982 F.Supp. at 1181.

**C. Ms. Porch's EEOC Charge, as Written, Identifies Unlawful Behavior Sufficient to Permit This Case to Proceed**

Ms. Porch's EEOC charge states facts sufficient to proceed to court even without *Sydnor*'s "reasonable investigation" analysis. She checked the "Sex" and "Retaliation" boxes on the charge. The charge alleges that AK9I discriminated against women by refusing to deploy them to work with the U.S. military in other countries. AK9I does not move to dismiss Count II, presumably because it recognizes that it cannot argue that Ms. Porch failed to exhaust her administrative remedies. The charge states an obvious claim for sex discrimination in promotion.

The charge also provides enough facts to support a claim for sexual harassment. "To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 331 (4th Cir. 2003) (citing *Spicer v. Va., Dep't of Corr.,* 66 F.3d 705, 710 (4th Cir.1995) (*en banc*)). The plaintiff must prove the same four elements to demonstrate a hostile work environment. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313-14 (4th Cir. 2008) (citing *Gilliam v. S.C. Dept. of Juvenile Justice,* 474 F.3d 134, 142 (4th Cir. 2007)) (alleging hostile work environment based on religion). The third factor considers "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli*, 648 F.3d at 220 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)) (internal quotations omitted). Severity and pervasiveness are classic questions of fact. *Mosby-Grant v. City of Hagerstown,* 630 F.3d 326,

335 (4th Cir. 2010) (citations omitted) (holding that jury could find pervasiveness based on male police recruits' frequent use of word "bitch," other epithets against women, and exclusion and special mistreatment of female plaintiff). Just one sufficiently severe incident of harassment can support a Title VII claim for sex discrimination. *See id.* at 220 n. 5. "'Personal gender-based remarks' that single out individuals for ridicule…have a greater impact on their listeners and are thus more severe forms of harassment" than "general crudity." *EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328-29 (4th Cir. 2010) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 197 (4th Cir. 2000)) (finding adequate evidence of severity where supervisor commented on plaintiff's breast size, asked to see and pump them, and speculated about her libido).

Here, the charge specifies sex discrimination and alleges that Mr. Kello, her "team lead" (that is, supervisor) groped Ms. Porch and sent her lewd text messages. These acts alone demonstrate unlawful sexual harassment. The charge also alleges that Mr. McDonald told her that she, personally, was only useful for sex. This remark was not merely "general crudity" but rather a remark about Ms. Porch's value as a human being *vis a vis* her gender. Coupled with the allegations regarding Mr. Kello, the charge outlines sexual harassment a hostile work environment. She then alleges that she complained to management to no avail. *See id.* at 314 (holding that employee's complaints provided evidence that harassment was unwelcome). Finally, she states that she believes she was fired for pretextual reasons. This would constitute textbook retaliation for protected activity—here, complaints about the way she was treated. If

nothing else, this Court must allow Ms. Porch's claims based on facts specified in the charge to stand.[2]

### D. Ms. Porch's EEOC Charge Satisfies the Fourth Circuit's Standard for Exhaustion Relating to Retaliation against Her

To state a claim for retaliation under Title VII, the plaintiff must show that she engaged in protected activity, the employer took an adverse action against her, and there was a causal connection between the protected activity and the adverse action. *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)). A plaintiff may sue for retaliation, even if she did not mention retaliation in her EEOC charge or check the "Retaliation" box on the charge form, if a reasonable EEOC investigation would have revealed the retaliation complaint. *Magnuson v. Peak Tech. Servs., Inc.*, 808 F.Supp. 500, 514 n. 12 (E.D. Va. 1992) (holding that plaintiff exhausted her administrative remedies on retaliation claim even though charge did not specify retaliation); *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F.Supp. 1495, 1499 n. 6 (favorably citing *Magnuson*). In fact, this Court has held that an EEOC charge exhausted remedies for a retaliation claim even though the claimant did not check the "Retaliation" box or advance a retaliation claim. *Williams v. Mancom, Inc.*, 323 F.Supp.2d 693, 695 (E.D. Va. 2004). In *Williams*, the claimant charged that Mancom had failed to rehire her due to her race and/or age, but she did not check the "Retaliation" box or suggest that she had been retaliated against. *Id.* at 694. This Court held that she had exhausted her administrative remedies because "it is reasonable to expect that an investigation into whether defendant's motive for not considering plaintiff was discriminatory might uncover evidence of the related illegal motive of retaliation based on plaintiff's complaints of discrimination." *Id.* at

[2] These would be Counts II, III, and IV. Only Count I is based solely on the *quid pro quo* allegations, which the charge does not specifically reference.

695. Here, Ms. Porch checked the "Retaliation" box on the EEOC charge. She specifically described complaining to management about harassment. She stated, "I believe I have been retaliated against for engaging in a protected activity…" The retaliation described in the complaint is reasonably related to the information in the EEOC charge, which describes enough of Ms. Porch's complaints to put AK9I on notice of the charges against it.

## II. Ms. Porch's Retaliation Claim under the False Claims Act Survives Because AK9I Terminated Ms. Porch in Part Because of Her Complaints about AK9I's Unlawful Treatment of Dogs Trained under a Government Contract

31 U.S.C. § 3730(h) provides a private cause of action to any employee whose employer retaliates against her for protected activity under the federal False Claims Act. Under that statute, any employee who is "discriminated against in the terms and conditions of employment because of lawful acts done by the employee…in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter" must be made whole by the employer. *Id.* § 3730(h)(1). There are three elements to such a retaliation claim, absent an actual False Claims Act claim by the employee: "(1) he took acts in furtherance of a qui tam suit; (2) his employer knew of these acts; and (3) his employer [took adverse action against] him as a result of these acts." *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 343 (4th Cir. 2010) (quoting *Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)). "Protected activity encompasses measures taken 'in furtherance of an action…filed or *to be filed* under this section.'" *Id.* (quoting § 3730(h)) (emphasis in *Mann*). Thus, § 3730(h) protects not only those who have filed a false claims suit but also employees who are gathering data about a possible fraud. *Id.* at 343-44 (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998)). These retaliation claims are not subject to the heightened pleading requirement which Rule 9(b) imposes on a person alleging a false claim, but rather Rule 8's

notice-pleading standard. *See U.S. ex rel. Elms v. Accenture LLP*, 341 Fed. Appx. 869, 873 (4th Cir. 2009) (unpublished opinion).

AK9I only takes issue with the first element, acts in furtherance. Ms. Porch personally witnessed Mr. Kello's mistreatment of dogs bound for military service (Compl. ¶ 39), and she complained about it to Mr. McDonald (Compl. ¶ 44). Mr. McDonald himself admitted to mistreating dogs. (Compl. ¶ 44.) Ms. Porch believes the government contracts which AK9I held required humane treatment of the dogs being trained.[3] Ms. Porch's complaints, coupled with Mr. McDonald's admissions of neglecting to properly care for the dogs and/or abusing them (Compl. ¶ 44), made it reasonably clear to AK9I that Ms. Porch had witnessed probable violations of AK9I's government contract and was bringing them to management's attention as part of an investigation.

**III. Ms. Porch's Common-Law Claims Are Not Preempted Because the Acts at Issue Took Place Outside the Workplace and Work Hours**

In South Carolina[4], an injury falls under the worker's compensation law, S.C. Code § 42-1-10 *et seq.*, when it arises "out of and in the course of employment." *Id.* § 42-1-160(A). Under the "arising out of" element of this test,

> if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment.

*Douglas v. Spartan Mills, Startex Div.*, 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965) (quoting *In re Employers' Liability Assurance Corp.*, 215 Mass. 497, 499, 102 N.E. 697 (1913)) (finding

---

[3] Ms. Porch has requested a copy of the relevant contract through the Freedom of Information Act but has not yet received a response. Further, Ms. Porch is prepared to amend her complaint to plead facts to satisfy this Court's pleading standard if it rules that the facts in the Complaint are insufficient.

[4] Ms. Porch analyzes this claim under South Carolina law because AK9I asserts that South Carolina law applies.

no compensable injury where claimant was driving from work to worker's compensation hearing and injured due to defective steering apparatus). Under the "in the course of" element of this test, the injury must occur "within the period of the employment, at a place where the employee may reasonably be in the performance of [her] duties, and while [s]he is fulfilling those duties or engaged in doing something incidental thereto." *Johnson v. Merchant's Fertilizer Co.*, 198 S.C. 373, 17 S.E.2d 695, 697 (1941) (quoting *Employers' Liability Assurance Corp. v. Montgomery*, 45 Ga.App. 634, 165 S.E. 903, 904 (1932)) (internal punctuation omitted). Mr. Kello coerced Ms. Porch into sex at her house outside of work hours. (Compl. ¶ 24.) Ms. Porch's bed is not "a place where the employee may reasonably be in the performance of [her] duties" as explained in *Johnson*. Paragraph 26 also describes a battery outside of work hours. Mr. Kello groped Ms. Porch during a trip on behalf of AK9I, but he did so outside their work hours, while the employees were at their hotel. (Compl. ¶¶ 34, 41.) She was not "fulfilling [work] duties" as required by *Johnson* while being groped in the hotel room. He then sent her lewd text messages, still outside of work hours. (Compl. ¶ 42.) These events, which constitute battery and intentional infliction of emotional distress, fall outside of the "course of employment" and are not preempted by South Carolina's worker's compensation law.

AK9I's cases on the issue are distinguishable. AK9I relies heavily upon *Dickert v. Metro. Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700 (1993). However, *Dickert* only decided whether sexual harassment was an accidental injury within the scope of the Worker's Compensation Act, not whether the sexual harassment arose out of and in the course of employment. *See id.* at 221, 428 S.E.2d at 702. Another case, *Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538 (1992), is factually distinguishable. There, the alleged harassment "occurred either on the premises of Mack Trucks, while Grove and the appellant were traveling

to or from work [in a carpool], or had their origin at Mack Trucks." *Id.* at 135-36, 417 S.E.2d at 539. Here, as described above, the harassment largely took place outside of work hours. While the lewd text messages and groping occurred on an AK9I trip, they took place outside of "business hours" on the trip. Mr. Kello may have abused his supervisory authority over Ms. Porch to require her to endure his harassment, but by and large, the harassment was not incidental to her work, took place outside of work hours, and occurred outside any normal work location. On these facts, the South Carolina worker's compensation law is not the appropriate remedy, and it does not preempt Ms. Porch's common-law claims.

**IV. Ms. Porch States a Claim for Negligent Retention and Supervision**

In South Carolina, a plaintiff claiming negligent supervision or retention can prevail, even in a case of sexual abuse, if the employer knows of inappropriate behavior by the employee. *See Doe by Doe v. Greenville Hosp. Sys.*, 323 S.C. 33, 40-41, 448 S.E.2d 564, 568 (Ct. App. 1994). In that case, the employee had sexual contact with an underage candy striper at a hospital. *Id.* at 35, 448 S.E.2d at 565. Because the hospital had previously learned that the employee had kissed and inappropriately touched the candy striper, the Court of Appeals affirmed the denial of the hospital's motion for a directed verdict. *Id.* at 40, 448 S.E.2d at 568. Here, AK9I's attacks on Ms. Porch's negligent supervision and retention claims both come down to whether AK9I knew or should have known that Mr. Kello posed a risk of groping Ms. Porch, sending her lewd text messages, and coercing her into sex. Prior to any of those events, Mr. McDonald learned that Mr. Kello and another trainer had grabbed Ms. Porch's thigh while working. (Compl. ¶ 22.) Mr. McDonald's concerns about that event reflect a concern about losing the government contract, not about Ms. Porch's well-being. (Compl. ¶ 23.) Mr. McDonald stated to Ms. Porch that he had placed a bet on whether she and Mr. Kello would have

sex. (Compl. ¶ 25.) This bet reflects a cavalier attitude toward sexual contact between an employee and her supervisor, who naturally enjoys a position of power over her. Mr. McDonald specifically warned Mr. Kello not to sleep with Ms. Porch. (Compl. ¶ 29.)

This unusually specific warning reflects not a concern for Ms. Porch's well-being but knowledge of Mr. Kello's proclivities. Mr. McDonald obviously recognized that Mr. Kello posed a danger to female employees, particularly his subordinates. The warning itself implies that Mr. McDonald knew that Mr. Kello had a habit of misconducting himself in a way that endangered other employees, as would support a claim for negligent retention. (*See* AK9I's Mot. 15 (quoting *Doe v. ATC, Inc.*, 367 S.C. 199, 206, 624 S.E.2d 447, 450-51 (Ct. App. 2005).) Likewise, the warning suggests that Mr. McDonald believed that he had both the ability to control Mr. Kello and the responsibility to do so in light of what he knew about Mr. Kello's past behavior, as would support a claim for negligent supervision. (*See* AK9I's Mot. 17 (citing *Degenhart v. Knights of Columbus*, 309 S.C. 114, 116-17, 420 S.E.2d 495, 496 (1992)). Yet Mr. McDonald allowed Mr. Kello to go on a lengthy work trip with Ms. Porch as his supervisee. Whatever the basis for Mr. McDonald's concerns, he should have known better than to allow Mr. Kello to interact with Ms. Porch away from the home office, whether in a supervisory capacity or not.

This Court can reasonably infer that Mr. McDonald knew that Mr. Kello would behave inappropriately with Ms. Porch. It was reckless to leave Mr. Kello as Ms. Porch's supervisor when he apparently knew that Mr. Kello would try to have sex with her or otherwise behave sexually toward her. Mr. McDonald could have foreseen that Mr. Kello would abuse his position of authority over Ms. Porch in pursuit of that goal. These facts amply support Ms. Porch's negligent supervision and retention claims.

**CONCLUSION**

This Court should deny AK9I's Motion to Dismiss. In the alternative, this Court should grant Ms. Porch leave to amend her Complaint to address any inadequacies found by this Court.[5]

Respectfully submitted,

____/s/______________________

John C. Cook, VSB 38310
jcook@cookcraig.com
Lee B. Warren, VSB 77446
lwarren@cookcraig.com
Broderick C. Dunn, VSB 74847
bdunn@cookcraig.com
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
*Counsel for Plaintiff*

[5] This includes specifics regarding the emotional distress suffered by Ms. Porch, for the purposes of her claim for intentional infliction of emotional distress.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2013, I will electronically file Plaintiff's Opposition to Defendant AK9I's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Arlene F. Klinedinst, Esquire
Vandeventer Black, PLLC
101 West Main Street, Suite 500
Norfolk, Virginia 23510
*Counsel for Defendant American K-9 Interdiction, LLC*

Deborah C. Waters, Esq.
Waters Law Firm, P.C.
Town Point Center, Suite 600
Norfolk, VA 23510
*Counsel for Defendant John Kello*

____/s/________________________
Lee B. Warren, VSB 77446
lwarren@cookcraig.com
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
*Counsel for Plaintiff*