UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WENDY PORCH,

     Plaintiff,

     v.                                 Civil Action No. 2:12cv690

AMERICAN K-9 INTERDICTION, LLC,

     and

JOHN KELLO,

     Defendants.

## DEFENDANT AMERICAN K-9 INTERDICTION, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

In its previously-filed motion to dismiss certain counts of plaintiff Wendy Porch's ("Porch") Complaint, defendant American K-9 Interdiction, LLC ("AK9I") demonstrated that the Court lacks subject matter jurisdiction over Counts I, III, and IV because Porch failed to exhaust her administrative remedies with respect to those claims. AK9I further demonstrated that Counts V, VI, VII, VII, and IX failed to state claims upon which relief can be granted. As AK9I demonstrates herein, Porch's response misconstrues the law, and the cases that she relies upon are distinguishable and/or otherwise unpersuasive. Moreover, even if Porch were permitted to amend her Complaint, it would be an exercise in futility for the Court to allow her to make such an amendment.

I.    **Porch Failed to Exhaust Her Administrative Remedies.  (Counts I, III, IV)**

As AK9I stated in its Motion to Dismiss and Memorandum in Support ("Memorandum"), Porch has failed to exhaust her administrative remedies in certain key ways in Counts I, III, and IV. The result is that this Court lacks subject matter jurisdiction over those counts

under Title VII of the Civil Rights Act of 1964 ("Title VII"). For the reasons explained below, the new cases cited by Porch in her Plaintiff's Opposition to Defendant AK9I's Motion to Dismiss ("Opposition") support, rather than detract from, AK9I's position that Porch has failed to exhaust her administrative remedies under Title VII.

In *Miles v. Dell, Inc.*, 429 F.3d 480 (4th Cir. 2005), the Fourth Circuit ruled that the plaintiff in that case had not exhausted her administrative remedies with respect to her retaliation claim under Title VII. Because "retaliation" was never included with that plaintiff's sex and pregnancy discrimination claims on the face of her EEOC charge, such claim was ruled "not reasonably related to her charge such that it would have been expected to follow from an investigation of Miles' sex and pregnancy discrimination claims." 429 F.3d 480 at 492. In the *Miles* case, unlike this case, the plaintiff had failed to do two things. She did not "check the retaliation box on her charge form and the narrative explaining her charge made no mention of retaliation." *Id.* Thus, the *Miles* case is not a simple "plaintiff-didn't-check-the-box" claim, as Porch alleges. Rather, it supports AK9I's position because, like Porch, the plaintiff in *Miles* made no mention of the claim she sought to pursue in court on the face of her EEOC Charge ("Charge").

In this case, although Porch checked the appropriate boxes on the face of her Charge (*see* Memorandum, Ex. 1), the Charge's narrative never alleged that she had sexual intercourse with Defendant Kello, whether forcibly or consensually, nor that she was subjected to *quid pro quo* sexual harassment by either Kello or AK9I. Memorandum, Ex. 1. Porch also never mentioned any type of sexual touching or harassment by her former AK9I co-workers, Daniel Barnett and Chad Radt, on the face of her Charge.

Because Porch omitted such key allegations from her Charge, she is now barred from pursuing them in this Court. Even under the case law cited by Porch, a new *quid pro quo* claim and

claims against alleged harassers not previously named could not have "developed by a reasonable investigation of the original complaint." Opposition at p. 4, citing *Evans v. Techs. Application & Serve Co.,* 80 F.3d 954, 963 (4th Cir. 1996). It should be obvious that Porch simply changed her story sometime between the time her EEOC Charge was dismissed on September 20, 2012, and the time she filed her Complaint on December 18, 2012. *See* Exhibit A, attached, EEOC Notice of Right to Sue, dated September 20, 2012.[1] Porch was represented by the same counsel who now represents her in this lawsuit. Ex. A. Yet, she failed to amend her EEOC Charge to add her *quid pro quo* claim against Kello or any of her new allegations under her hostile work environment and retaliation claims. As a result, AK9I never had an opportunity to investigate Porch's new allegations, nor to refute them before the EEOC. This is exactly the harm Congress intended to avoid when it included the "exhaustion of administrative remedies" requirement in the language of Title VII.

Porch never alleged in her Complaint that she complained to AK9I, or to the EEOC, about Kello's alleged 'forced' sex with her on February 26, 2011. *See* Complaint; Memorandum, Ex. 1. She should not be permitted to make this allegation now, in this lawsuit, because she never complained that Kello forced her to have sexual intercourse with him prior to December 20, 2012. Porch made no such allegation during the company's investigation, nor during the EEOC's nine-month investigation. Memorandum Ex. 1.

In the case on which Porch heavily relies in her Opposition, *Coles v. Carilion Clinic,* 2012 WL 2884917 (W.D. Va.) (July 13, 2012), Judge Conrad distinguished the facts in *Coles* from the facts in *Chacko v. Patuxent Institution,* 429 F.3d 505 (4th Cir. 2005), and ruled that the plaintiff in *Coles* had adequately exhausted his administrative remedies regarding his race harassment claim.

---

[1] Exhibit A is a necessary jurisdictional document for this Court to consider in ruling on AK9I's Motion to Dismiss under Rule 12(b)(1).

3

In *Coles*, the plaintiff's EEOC Charge included allegations of hostile work environment harassment that were verbal only. *Id*. at *4. Judge Conrad explained that the Court did have subject matter jurisdiction over *nonverbal* hostile work environment allegations that were later added to Mr. Coles' lawsuit because they were "sufficient to afford adequate notice to the employer of the factual basis for the claim," and that "the 'centerpiece' of Coles' discrimination and harassment claims [did] not shift between his EEOC charge and his complaint." *Id*. at *4-6, *citing Chacko* at 429 F.3d at 510.

In this Complaint, the "centerpiece" of Porch's claim has changed from solely an alleged sexually hostile work environment before the EEOC (*e.g.*, sexual comments by AK9I employees Kello and McDonald, groping by Kello, a crotch grab by Kello, and lewd and sexually explicit text messages from unnamed individuals, *see* Memorandum, Ex. 1) to a lawsuit of alleged *quid pro quo* sex harassment involving forced sexual intercourse and greatly expanded retaliation and hostile work environment claims (*e.g.*, paragraphs 19, 22-27, 29, 32-34, 46, 48, 62-69, and 76-81 of Porch's Complaint). Thus, this case is factually distinguishable from *Coles* on the exhaustion of remedies issue.

The courts in *Coles* and in *Sydnor v. Fairfax County, Virginia*, 681 F.3d 591 (4th Cir. 2012) correctly ruled on their specific facts that those plaintiffs had pled facts and allegations in their lawsuits that were "reasonably related" to their allegations made to EEOC. In *Sydnor*, a disability discrimination case, the alleged discrepancy between the charge and the lawsuit was only whether the alleged requested accommodation for full-duty work with a wheelchair was reasonably related to the different, requested accommodation of light duty (or part time) work. *Id*. at p. 593. The *Sydnor* court noted that the plaintiff in that case had alleged, in both her complaint and charge, the same place of work, the same actor, the same disability and the same type of discrimination: failure to reasonably accommodate under ADA. *Id*. at 595. In this case, Porch added a whole new

cause of action (*quid pro quo* sex harassment), two new actors (Barnett and Radt), three new

locations of the alleged harassment (Porch's company housing, Kello's truck, and a California hotel

room), and three new sexual acts by Kello (sexual intercourse, climbing on top of her, and fondling

her). There should be no doubt that such an expansion of claims are neither based on the same

"central factual allegations" nor are they "sufficient to afford adequate notice to [AK9I or the

EEOC] of the factual basis for the claim." *Coles*, 2010 WL 2884917 at *4.

      The Fourth Circuit in *Sydnor* and *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124

(4th Cir. 2002), Judge Conrad in *Coles*, and Judge Wilson in *Carpenter v. Virginia Department of*

*Transportation*, Civil Action No. 5:06cv00035, 2006 WL 3314426 (W.D. Va. Nov. 14, 2006), all

considered the plaintiff's EEOC questionnaire and related EEOC file documents in assessing

whether the plaintiffs in those cases had failed to exhaust their administrative remedies. *Coles* at *6,

fn. 5. Interestingly, in her Opposition, Porch submitted no EEOC documents that might have

supported her claim that her allegations to EEOC were reasonably related to her new *quid pro quo*

count of sex harassment and expanded claims of hostile work environment harassment and

retaliation. Accordingly, this Court must presume that no such EEOC documents exist and

conclude that Porch failed to exhaust her administrative remedies with respect to Counts I, III and

IV.

      The other cases cited in her Opposition to Dismissal of Counts I, III and IV also are

distinguishable on their facts. In *Smith v. First Union Bank*, 202 F.3d 234 (4th Cir. 2000), the Fourth

Circuit reversed in part, and affirmed in part, the District Court's grant of summary judgment to the

employer on all claims. The Fourth Circuit ruled that the plaintiff in *Smith* had exhausted her

administrative remedies with respect to her retaliation claim. In *Smith*, the EEOC charge alleged

that the employer had retaliated against the plaintiff by "chastising her and threatening to terminate

her employment for consulting with counsel." *Id.* at 248.  By contrast, Ms. Smith's complaint filed

in court alleged that the employer retaliated against her by "forcing her to work on Scoggins' floor

and by not offering her any other positions." *Id.*  The Fourth Circuit decided that the two types of

retaliation allegations were "reasonably related" and would be "expected to follow from an

administrative investigation," because both sets of allegations "alleged retaliatory actions by First

Union's management because of her complaints about Scoggins' harassment." *Id.*

The disparate retaliation allegations in Porch's EEOC Charge and Complaint are

factually distinguishable from *Smith*.  In this case, Porch first alleged that she was retaliated against

because of her own "protected activity" by complaining to company management on June 21, 2011.

EEOC Charge, Memorandum, Ex. 1.  However, in her Complaint, Porch alleged only that she was

retaliated against under Title VII because of her attorney's letter sent to AK9I on June 28, 2011.

Again, Porch's two different allegations involve two different actors and two different dates on

which  the alleged "protected activity" occurred.  Complaint at ¶¶ 53, 82-89.  Since EEOC did not

have an opportunity to investigate the latter allegations, Count IV should be dismissed for lack of

subject matter jurisdiction.

*Okoli v. City of Baltimore*, 648 F.3d 216 (4th Cir. 2011), cited at page six of the

Opposition, also is distinguishable from this case based on the facts.  In *Okoli*, the Fourth Circuit

reversed the District Court's grant of summary judgment to the employer based on the Appellate

Court's interpretation of the plaintiff's evidence of sexual advances and innuendo, in light of her

internal complaint to her employer of "harassment," rather than "sex harassment."  The *Okoli*

quotation in Porch's Opposition was related to whether the plaintiff had engaged in "protected

activity" for purposes of stating a *prima facia* retaliation claim under Title VII.  The *Okali* quotation

had absolutely nothing to do with whether that plaintiff had exhausted her administrative remedies under Title VII.

At page seven of her Opposition, Porch cites *Kidwell v. Sheetz, Inc.,* 982 F. Supp. 1177, 1184 and 1181 (W.D. Va. 1997) and *Glover v. Oppleman,* 178 F. Supp. 2d 622, 638 (W.D. Va. 2001), for her propositions that (1) her hostile work environment EEOC Charge did not need to include all of the alleged harassers' names; and (2) *quid pro quo* allegations can form or contribute to a hostile work environment claim under Title VII. However, those cases cited by Porch do not support her propositions. The exhaustion of remedies question decided in *Kidwell* involved a new, minor incident of hostile work environment harassment by the same alleged harasser Ms. Kidwell named in her EEOC charge. In *Glover,* the exhaustion of remedies issue never arose. The *Glover* court's discussion of *quid pro quo* allegations forming the basis of a hostile work environment claim, cited at the bottom of page seven of the Opposition, was for purposes of determining the <u>severity</u> of the sexual harassment alleged on a summary judgment motion – <u>not</u> for purposes of whether Ms. Glover exhausted her administrative remedies, as Porch implies.

The District Court's decision in *Kidwell, supra,* contains additional language that is instructive to this case on the question of whether a *quid pro quo* claim is "reasonably related to" a hostile environment claim for purposes of whether Porch exhausted her administrative remedies for Count I. Judge Michael, opining that Ms. Kidwell had not adequately pled and supported a *quid pro quo* claim that would survive the employer's summary judgment motion, stated as follows:

> To be sure, under *Hott,* the court at summary judgment is invited to look to a "broad spectrum of circumstances," 922 F.Supp. at 1123, in finding that a plaintiff has suffered to a job detriment. As well, *Canada v. Boyd Group, Inc.,* 809 F.Supp. 771 (D.Nev. 1992) contains language supporting the notion that evidence of hostile work environment sexual harassment also might support a simultaneous claim of *quid pro quo* sexual harassment. *Id.* at 777

("[I]t is certainly feasible that the factual basis for a *quid pro quo* allegation and a hostile environment allegation may overlap.").

This court is of the opinion, however, that plaintiffs [sic] claim and supporting evidence appear to concern purely hostile work environment sexual harassment.

\* \* \*

A final concern of the court here lies in the relationship between a *quid pro quo* charge and a hostile environment charge. The first statement from *Canada* quoted *supra* at 1181 contains troubling consequences for the distinctions between the two types of sex discrimination charges. Applying *Canada's* first quoted statement's own terms, a hostile work environment of a sufficient severity can constitute "*quid pro quo*" sexual harassment without any requirement of a stated exchange of job benefits or detriments occurring from acceptance or rejection of an offer or request for sexual favors. Such an exchange must underlie the "*quid pro quo*" claim or the language of "this for that" is simply meaningless.

It is surely possible that a single case may present facts which would support both a *quid pro quo* claim and a hostile work environment claim, in that the *quid pro quo* claim could well be a part of the hostile environment, but the *quid pro quo* claim still would require the essential element of the request for sexual favors.

Cursory reflection shows, however, that this interrelationship does not work in reverse. No matter how severe the hostile work environment may be, that environment alone cannot in logic also support a *quid pro quo* claim where such a claim depends only on that hostile environment.

In the second quotation from *Canada*, *supra*, at 1181, the court there turned away from a subjective test and by strong implication supported an objective standard. Such a standard appears entirely appropriate in this context, recognizing that a subjective test would, in effect, pose few or no limits on the *quid pro quo* claim.

*It is important to recognize the necessity of sharp distinctions between the two types of claims. Failing to do so, in effect, simply merges the quid pro quo claim into the hostile environment claim. Such a result may be desirable, but it is not legally proper.*

982 F. Supp. 1177, 1181-1182 (emphasis added).  Likewise, it is not proper in this case to merge the distinctions between Porch's *quid pro quo* and hostile environment claims in her Complaint, and her very different claims made to AK9I and the EEOC.

AK9I does not disagree with the legal pronouncements made by Porch in Section I.C., pages eight through ten, of her Opposition.  AK9I simply disagrees with Porch's application of those legal principles to the facts alleged in her EEOC Charge compared to the facts alleged in her Complaint. Because the two sets of allegations are so different, this Court must dismiss Counts I, III and IV of Porch's Complaint for lack of subject matter jurisdiction.

**II.      Porch Has Not Alleged, and Cannot Allege, Facts to State a Plausible Claim for Retaliation under the False Claims Act.  (Count V)**

As AK9I demonstrated in its Memorandum, Porch's allegations fail to satisfy the first element of a retaliation claim under the False Claims Act ("FCA") because the Complaint does not allege any fraudulent conduct by AK9I or that Porch took any acts in furtherance of a *qui tam* action.[2]  In her Opposition brief, Porch argues that her FCA retaliation claim survives because she alleged that she witnessed the alleged mistreatment of dogs and complained about it to her supervisor.  Opposition at 12.  Such actions do not constitute a protected activity under the FCA, as a matter of law.

The Complaint does not contain a single allegation of possible fraud on the part of AK9I. To constitute a protected activity, the activity "must evince some attempt to expose possible fraud." *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 735 (4th Cir. 2010).  "[W]ithout fraud, there can be no FCA action."  *Mann v. Heckler*, 630 F.3d 338, 345-46

---

[2] Porch's failure to plead facts to satisfy the first element of a claim under 31 U.S.C. § 3170(h)(1) is enough for the Court to dismiss Count V.  Porch's Complaint is also devoid of any allegations that she, in any way, notified AK9I of the possibility of a *qui tam* action via "threats or warnings" of FCA litigation.

(4th Cir. 2010).  At most, Porch witnessed and reported a fellow employee's failure to comply with a provision of AK9I's contract with the government.  Such non-compliance with federal government contract requirements does not fall under the FCA.  *See id.*; *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999).

      Porch does not allege that she took any acts or engaged in any investigation in furtherance of a *qui tam* action.  After witnessing the dogs' alleged mistreatment, Porch claims only that she reported the mistreatment to Mr. McDonald.  It is not enough for Porch simply to report to her supervisor that she has concerns about AK9I possibly violating its government contract.  *Dillon v. SAIC, Inc.*, Civil Action No. 1-12-CV-390, 2013 WL 324062 at *5 (E.D. Va. Jan. 28, 2013) (citing *Zahodnick v. IBM*, 135 F.3d 911 (4th Cir. 1997)).

      To persuade the court to grant leave to amend, Porch proffers that she has requested a copy of AK9I's contract with the government to confirm her belief that the contract required the humane treatment of dogs.  Opposition at n.3.  Porch also proffers that she is prepared to amend her complaint to plead additional facts, presumably pertaining to some sort of ongoing investigation.[3] *Id.*  The results of such an investigation are not relevant for two reasons—(1) Porch was not investigating AK9I's alleged fraudulent conduct at the time her employment was terminated; and (2) Porch's requested leave to amend Count V of her Complaint would be futile because any efforts to "investigate" whether the alleged mistreatment of dogs was in violation of AK9I's contract with the government, ongoing or otherwise, cannot constitute a protected activity because they occurred *after* the alleged retaliatory action—termination of Porch's employment.  *See Dillon*, 2013 WL 324062 at *7 (holding that the Plaintiff's act of filing an ethics complaint after he was informed of his termination failed to satisfy the protected activity element).  Porch's actions subsequent to her

---

[3] Porch did not attach a proposed amended complaint to her brief.

termination do not receive any protection under the FCA.  Amendment of the Complaint to add additional allegations as Porch suggests would be futile because Porch cannot allege that she took any actions in furtherance of a *qui tam* suit.

For the foregoing reasons, and those stated in AK9I's prior Memorandum, the Court should dismiss Count V with prejudice because Porch has failed to state a plausible claim for retaliation under the FCA.

III.   **Porch's Common Law Claims are Preempted by the South Carolina Workers' Compensation Act Because Porch's Injuries Occurred In the Course of Her Employment.  (Counts VI, VII, VIII, IX)**

In arguing that her common law claims are not preempted by the South Carolina Workers' Compensation Act (the "Act"), Porch takes issue only with whether her alleged injuries occurred in the course of her employment.[4]  The words "in the course of employment" have reference to the time, place and circumstances under which the accident occurs.  *Eargle v. S.C. Elec. & Gas Co.*, 205 S.C. 423, 32 S.E.2d 240, 242 (1944).  An injury occurs in the course of the employment when it happens within the period of employment at a place where the employee may reasonably be in the performance of her duties and while fulfilling those duties or engaging in something incidental to those duties.  *Broughton v. South of the Border*, 336 S.C. 488, 498, 520 S.E.2d 643, 639 (Ct. App. 1999).  "[A]n employee . . . need not be in the actual performance of the duties for which [s]he was expressly employed in order for [her] injury . . . to be in the course of the employment." *Beam v. State Workmen's Comp. Fund*, 261 S.C. 327, 332, 200 S.E.2d 83, 86 (1973).  "It is sufficient [as long as] the employee is engaged in a pursuit or undertaking . . . which in some logical manner pertains to or is incidental to [her] employment." *Id.*

---

[4] Porch does not appear to dispute that her alleged injuries arose "out of her employment," nor does she offer any cases to support such an argument.  Opposition at 12-14.

Porch erroneously argues that her injuries did not occur in the course of her employment because the alleged acts causing those injuries happened "outside the workplace and work hours." Pl.'s Opp. Def.'s Mot. Dismiss 12. The Court of Appeals of South Carolina found that an injury occurred in the course of employment under facts similar to those alleged by Porch. In *Ardis v. Combined Ins. Co.*, 380 S.C. 313, 669 S.E.2d 628 (S.C. Ct. App. 2008), an employee died trying to escape a hotel fire during an out-of-town business meeting. 380 S.C. at 318-19, 669 S.E.2d at 631. After the conclusion of the business meeting, the employee decided to stay an extra night at a hotel before to traveling home the next day. *Id.* The fire occurred sometime after the employee fell asleep, and he passed away trying to escape the hotel. *Id.* The employer argued that the death occurred outside the course of employment because, *inter alia*, it occurred after the conclusion of the business meeting (or as Porch would say "outside of work hours") and the employee was no longer in the performance of his duties. *Id.* at 323, 669 S.E.2d at 633. The court disagreed and held that, although the meeting and the employee's official business duties may have ended earlier in the day, it was "reasonably foreseeable" and "incidental to the fulfillment" of the employee's duties for the employee to have spent the night at the hotel. *Id.* The employee's act of sleeping in the hotel room before returning home was "logical under the circumstances" and "incidental to the business trip." *Id.* at 323, 699 S.E.2d at 633-34. Thus, the death occurred in the course of the employment. *Ardis* clearly indicates that an injury that occurs "outside the workplace", "outside of work hours", or when the employee is no longer in the performance of her duties is not necessarily outside the course of employment. Also, contrary to Porch's assertion, (Opposition at 13) *Ardis* also makes clear that, under the right circumstances, an employee's bed (where Mr. Ardis was when the hotel fire started) can be a place where the employee may reasonably be in the performance of her duties.

12

The alleged incidents giving rise to Porch's common law claims occurred in the course of her employment. Porch is a resident of the State of Illinois. Compl. ¶ 5. AK9I hired Porch to train dogs to fulfill AK9I's contract with the government. Compl. ¶ 10. Porch's primary work location while employed with AK9I was at AK9I's facility in South Carolina. Compl. ¶ 59. While employed in South Carolina, Porch was provided with company housing. Compl. ¶ 24. As part of her duties training dogs, Porch traveled, along with other AK9I employees, to places such as Yuma, Arizona and Twenty Nine Palms, California. Compl. ¶ 28. While traveling to fulfill AK9I's obligations under its contract with the government, Porch, and the other AK9I employees, regularly stayed in hotels. Compl. ¶¶ 32, 34, 41.

The alleged improper acts which caused Porch's injuries occurred while Porch was in company-provided housing or hotel accommodations (Compl. ¶¶ 24, 34), or while Porch traveled in carrying out AK9I's obligations under its government contract. (Compl. ¶¶ 38, 40, 41, 42). When Porch spent the night of February 26, 2011, at her company-paid housing in South Carolina, she was "engaged in a pursuit or undertaking . . . which in some logical manner pertain[ed] to or [wa]s incidental to [her] employment." *Beam*, 261 S.C. at 332, 200 S.E.2d at 86. According to the reasoning in *Ardis*, any injury suffered by Porch while in her company housing that evening, whether by intentional tort or by accident, occurred in the course of her employment. The same analysis applies to the alleged injuries Porch suffered while in hotel rooms or while traveling for AK9I's business. In every instance giving rise to Porch's alleged common law claims, Porch was engaged in activities that were "reasonably foreseeable and incidental to the fulfillment" of her duties as a dog trainer for AK9I. *Ardis*, 380 S.C. at 323, 699 S.E. 2d at 633.

Porch's arguments in support of her negligent retention and supervision claims undercut her attempt to persuade the court that her common law claims are not preempted because they are internally inconsistent. Porch alleges that her battery and intentional infliction of emotional distress ("IIED") claims occurred as a direct result of her employer's negligent, work-related decision to assign Kello to Porch's work team. Compl. ¶¶ 109-111, 114-116. In support of her negligent retention and supervision claims, Porch urges the Court to rule that her injuries directly resulted from her employer's work-related negligence. AK9I's allegedly negligent decision to assign Kello as Porch's team lead occurred in the course of Porch's employment, and she alleges that her injuries flowed directly from that decision. *Id*. To the extent that Porch's alleged injuries giving rise to her negligent retention and supervision claims stem from that decision by AK9I, those injuries also arose in the course of her employment. The Court should accept Porch's allegations in support of her negligent retention and supervision claims as true, as it must on a Rule 12(b)(6) motion. In doing so, the Court should hold that Porch's common law claims arose out of and in the course of her employment, and they are preempted by the Act.

For the foregoing reasons, and for those reasons already set forth in AK9I's Memorandum, this Court should dismiss Counts VI, VII, VIII, and IX of the Complaint, with prejudice, for failure to state a claim upon which relief can be granted.

## IV.   Porch Failed to State Claims for IIED, Negligent Retention and Negligent Supervision.

### A.   Porch Failed to Respond to AK9I's Argument in Support of Dismissal of her IIED Claim for Failure to State a Claim.  (Count VII)

Porch elected not to respond to AK9I's argument in support of dismissal of Porch's IIED claim for failure to state a claim; rather, Porch merely requests leave to amend her Complaint to "address any inadequacies found by this Court," including "specifics regarding the emotional distress suffered by Ms. Porch." Opposition at 16, n.5. Porch did not attach a proposed amended

14

complaint or proffer any of the "specifics" she purportedly suffered.  The Court should treat Porch's

failure to respond to this particular argument as a concession that she failed to state a claim for

IIED.  *See Griffith v. Wal-Mart Stores East, L.P.*, No. 6:12-CV-00011, 2012 WL 5465501 at *5 n.5

(W.D. Va. Aug. 24, 2012) (stating that "a district court may treat the failure to precisely respond to

an argument as a concession of the point.") (citing *FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir.

1997); *Kulik v. Cochran*, 975 F. Supp. 812, 814 (E.D. Va. 1997)).  Should the Court decline to do

so, AK9I relies on its prior Memorandum wherein AK9I demonstrated that Porch's allegations

failed to state a claim for IIED.

### B. Porch's Arguments in Opposition to Dismissal of Negligent Retention and Supervision Claims Are Unpersuasive.  (Counts VIII and IX)

As demonstrated in AK9I's prior Memorandum, Porch failed to sufficiently state plausible

claims for negligent retention and supervision.  According to Porch, Mr. McDonald's alleged

knowledge that Kello grabbed Porch's thigh once while working (Compl. ¶ 22) and that Kello

placed a wager on whether he would have sex with Porch (Compl. ¶ 25) is sufficient to impute upon

AK9I knowledge that Kello was in the habit of conducting himself in a manner dangerous to others.

Opposition at 14-15.  However, the prior alleged misconduct by Kello lacks a sufficient nexus to the

alleged sexual batteries and emotional distress suffered by Porch.

As demonstrated in AK9I's prior Memorandum, the Court of Appeals of South Carolina has

held that knowledge of misconduct much worse than the conduct of which Mr. McDonald allegedly

was aware, failed to give sufficient notice that an employee was dangerous. *Doe v. ATC, Inc.* 367

S.C. 199, 203, 624 S.E.2d 447, 449 (Ct. App. 2005) (holding that knowledge that employee grabbed

a woman, tried to force her to kiss him, and made inappropriate sexual comments, did not give

employer reason to know employee was dangerous).  As was the case in *ATC, Inc.*, "the totality of

the prior [conduct by Kello] is a far cry from the reprehensible, persistent pattern of abuse"

necessary to put an employer on notice that an employee is dangerous. *Id*. at 208-09, 624 S.E.2d at 451. Thus, Porch has failed to plead facts sufficient to show that AK9I negligently retained Kello, and the Court should dismiss Count VIII pursuant to Rule 12(b)(6).

The same analysis applies in support of dismissal of Count IX. Porch argues that McDonald's warning that Kello not sleep with Porch "suggests that Mr. McDonald believed that he had both the ability to control Mr. Kello and the responsibility to do so." Opposition at 15. Knowledge that Kello grabbed Porch's thigh and that Kello bet he would have sex with Porch does not put AK9I on any notice that Kello would be a danger to Porch. At most, McDonald was aware that Kello was interested in a sexual relationship with another adult employee, Porch. Knowledge of such facts falls short of the types of cases where courts have found that an employer knew that an employee presented an unreasonable risk of harm to the public, necessitating control by the employer. *See Doe v. Greenville Hospital Sys.*, 323 S.C. 33, 448 S.E.2d 564 (Ct. App. 1994) (holding that the necessity to exercise control existed where employer knew that employee had earlier sexual conduct with the same minor); *Hoskins v. King*, 676 F. Supp. 2d 441 (D.S.C. 2009) (finding no necessity to control where employer knew of employee's prior speeding tickets and car accidents while talking on a cell phone). Porch has failed to allege facts which would give AK9I reason to know of the necessity and opportunity for exercising control over Kello.

For the above reasons, and those stated in AK9I's prior memorandum, the Court should dismiss Count IX for failure to state a claim under Rule 12(b)(6).

## CONCLUSION

The Court should dismiss, with prejudice, Porch's *quid pro quo* sex discrimination (Count I), hostile work environment (Count III), and Title VII retaliation (Count IV) claims for lack of subject matter jurisdiction and her FCA retaliation (Count V), sexual battery (Count VI),

IIED (Count VII), negligent retention (Count VIII), and negligent supervision (Count IX) claims

for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/Anne G. Bibeau
Arlene F. Klinedinst, Esq. (VSB No. 31101)
Anne G. Bibeau, Esq. (VSB No. 41488)
Michael P. Giordano, Esq. (VSB No. 82139)
Vandeventer Black LLP
101 W. Main Street, Ste. 500
Norfolk, VA  23510
Tel. 757-446-8600
Fax 757-446-8670
aklinedinst@vanblk.com
abibeau@vanblk.com
mgiordano@vanblk.com
*Counsel for Defendant American K-9 Interdiction, LLC*

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on February 19, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Cook, Esq.
Lee B. Warren, Esq.
Broderick C. Dunn, Esq.
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
jcook@cookcraig.com
lwarren@cookcraig.com
bdunn@cookcraig.com
*Counsel for Plaintiff*

Deborah C. Waters
Waters Law Firm, P.C.
Town Point Center, Suite 600
Norfolk, VA 23510
dwaters@waterslawva.com
*Counsel for Defendant John Kello*

/s/Anne G. Bibeau
Anne G. Bibeau, Esq. (VSB No. 41488)
Vandeventer Black LLP
101 W. Main Street, Ste. 500
Norfolk, VA 23510
Tel. 757-446-8600
Fax 757-446-8670
abibeau@vanblk.com
*Counsel for Defendant American K-9 Interdiction, LLC*

4820-0580-2770, v. 1