IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| WENDY PORCH | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:12cv690 |
| | : | |
| AMERICAN K-9 INTERDICTION, LLC, et al. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT KELLO'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Wendy Porch, by and through undersigned counsel, and hereby opposes defendant John Kello's ("Mr. Kello") Motion to Dismiss. In further support thereof, Ms. Porch states the following:

**STATEMENT OF FACTS RELEVANT TO MOTION TO DISMISS**

Richard McDonald of Defendant American K-9 Intervention, LLC ("AK9I") hired Ms. Porch as a dog trainer on or about November 29, 2010. (Compl. ¶ 8.) Ms. Porch was to train dogs in the detection of improvised explosive devices, pursuant to a government contract. (Compl. ¶ 9.) On or about January 28, 2011, Ms. Porch was assigned to a training team whose Team Leader/Supervisor was Mr. Kello. (Compl. ¶ 18.) Soon after Ms. Porch began working for AK9I, she began to experience harassment at the hands of her supervisors. (Compl. ¶ 20.) On or about February 21, 2011, while taking a break from training dogs, Mr. Kello grabbed Ms. Porch's thigh, then had Daniel Barnett, another trainer, do the same. She told both of them to stop and respect her personal space. (Compl. ¶ 22.)

1

On or about February 26, 2011, following a going-away party for an AK9I employee, Mr. Kello attempted to seduce Ms. Porch at her company housing in South Carolina. She refused his advances three times. Mr. Kello then told Ms. Porch that Mr. Riddle was his friend and decided which employees could go to Mojave Viper, a large United States Marine Corps event in California, for EMV training; that if she did not get EMV training, she would not be able to go to Afghanistan for AK9I, a position that would have included a security clearance and far better pay; and that she should not "piss him off" because that would anger Mr. Riddle, Mr. Riddle would go to Mr. McDonald, and Mr. McDonald would fire Ms. Porch. Solely because of these threats and insinuations, Ms. Porch had sexual intercourse with Mr. Kello. (Compl. ¶ 24.)

Mr. Kello's behavior continued after Ms. Porch left for Yuma, Arizona and Twenty Nine Palms, California, along with other AK9I employees, including Mr. Kello, to train dogs. Prior to leaving on this trip, Mr. Kello told Ms. Porch that Mr. McDonald had warned Mr. Kello not to sleep with Ms. Porch. (Compl. ¶ 29.) On or about March 22, 2011, while the AK9I employees were in Yuma for training, Mr. Kello came into Ms. Porch's hotel room and fondled her from behind. She told him to stop. (Compl. ¶ 34.) On or about April 29, 2011, Mr. Kello sent text messages to Ms. Porch saying, "Well if you're ready, how do you want it then? … Cock sandwich is today's special." (Compl. ¶ 38.) On or about May 2, 2011, Mr. Kello sent a text message to Ms. Porch saying, "I'm gonna bring your food you want me to eat that pussy." (Compl. ¶ 40.) The following day, after the AK9I employees had checked into a hotel, Ms. Porch was sitting in the back seat of the AK9I truck. Mr. Kello came to the door and grabbed Ms. Porch's crotch and butt. She told him to leave her alone and struck him. (Compl. ¶ 41.) The same day, Mr. Kello sent her another message saying, "We should fuck like rabbits to celebrate" the death of Osama bin Laden. (Compl. ¶ 42.) On that same day, while the AK9I

employees had stopped at a gas station, Mr. Kello approached Ms. Porch from behind and pressed his crotch against her backside.  She told him to stop.  (Compl. ¶ 42.)  Mr. Kello also sent a multimedia text message to Ms. Porch with a picture of his crotch and the words, "I'm waiting." (Compl. ¶ 42.)

Ms. Porch and AK9I have already briefed AK9I's motion to dismiss.  Mr. Kello joins AK9I's argument that Ms. Porch failed to exhaust her administrative remedies with respect to Counts I, III, and IV.  Counts VI and VII are against Mr. Kello individually, and these counts are his primary target, based in part on his argument that this Court lacks jurisdiction to hear Counts I, III, and IV.  Mr. Kello does not challenge Counts II, V, VIII, IX, or X.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1970).  To survive dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell,* 550 U.S. at 570).  Moreover, under the demanding strictures of a Rule 12(b)(6) motion, the plaintiff's complaint is to be construed in a "light most favorable to the plaintiff."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail.  *Bell,* 550 U.S. at 563.

## ARGUMENT

### A.     This Court Has Supplemental Jurisdiction over the Claims against Mr. Kello

#### 1.     Ms. Porch Exhausted Her Administrative Remedies with Respect to Counts I, III, and IV

A plaintiff suing under Title VII of the Civil Rights Act of 1964 must first have exhausted her administrative remedies by filing a charge with the EEOC. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Id.* The plaintiff can sue based on any facts in the charge or which "can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir. 2000). Judge Conrad of this Division recently analyzed in detail the Fourth Circuit's jurisprudence on exhaustion of administrative remedies in the Title VII context. *See Coles v. Carilion Clinic*, --- F.Supp.2d ---, Civil Action No. 7:11-cv-00555, 2012 WL 2884917, at *4 (E.D. Va. July 13, 2012). Judge Conrad recognized one type of exhaustion case in which the EEOC charge presents, for example, a sex discrimination claim based on certain facts and the complaint presents a sex discrimination claim based on different facts.[1] *See id.* Such cases fall under two categories in the Fourth Circuit:

> (1) both the EEOC charge and the complaint allege the same type of claim, but the central factual allegations supporting the claim differ as between the charge and the complaint; and (2) both the EEOC charge and the complaint allege the same type of claim, and the factual allegations supporting the claim, although different as between the charge and the complaint, are nonetheless sufficient to afford adequate notice to the employer of the factual basis for the claim.

---

[1] The other type, inapplicable here, describes an EEOC charge that deals with, for example, sex discrimination and a complaint that deals with, for example, race discrimination. *See id.* In those cases, the plaintiff has failed to exhaust her administrative remedies. *Id.*

*Id.* In the former category, the Fourth Circuit will find that the plaintiff has failed to exhaust her administrative remedies. *See Chacko v. Patuxent Institution*, 429 F.3d 505, 512-13 (4th Cir. 2005) (cited by *Coles* as representative). In the latter, the Fourth Circuit will find that the plaintiff *has* exhausted her remedies. *See Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 594-95 (4th Cir. 2012) (cited by *Coles* as representative). In such a case, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same…" *Id.* at 595 (quoting *Smith*, 202 F.3d at 247). The *Sydnor* analysis considers whether the charge and complaint "involved the same place of work and the same actor" and "focused on the same type of discrimination" regardless of whether the *form* of discrimination changed between the charge and complaint. *Id.* In *Sydnor*, the Fourth Circuit held that the plaintiff, suing under the Americans with Disabilities Act, had exhausted her administrative remedies by mentioning light-duty work in the charge even though she asked, at summary judgment, for full-duty work with the use of a wheelchair. *Id.* at 594-95. In *Smith*, the plaintiff's charge alleged that management retaliated against her by "chastising her and threatening to terminate her employment," but the complaint alleged that management retaliated against her by forcing her to work on the harasser's floor and not offering her any alternative positions. *Smith*, 202 F.3d at 248. Because the underlying protected conduct was the same in the charge and the complaint, the Fourth Circuit held that Smith had exhausted her administrative remedies. *Id.*

> ### a.   Ms. Porch's EEOC Charge Satisfies the Fourth Circuit's Standard for Exhaustion Relating to Her Harassment at Mr. Kello's Hands

This case is no different from *Sydnor* and its progeny. Ms. Porch's charge does not describe Mr. Kello's coercing her into having sex with him, but it states that he groped her and sent her lewd text messages. (Exh. 1.) Her charge and complaint, particularly Count I, both

identify Mr. Kello as the offending manager and describe conduct which is obviously sexual harassment illegal under Title VII.  This is a case of a new form of discrimination, as in *Sydnor*, not a new type of discrimination, a new discriminator, or a new place of work.  One eminently reasonable question from the EEOC investigator would have revealed the sexual coercion: "Did Mr. Kello do anything else inappropriate to you?"  The Fourth Circuit clearly expects that the EEOC will conduct a broad investigation of a charge.  As *Smith* reveals, a charge of one type of harassment will reasonably lead the EEOC to ask whether the harasser did anything else.  This expectation reflects both Congress's preference for resolving discrimination claims outside the courts and the EEOC's expertise in doing so.

In fact, the Fourth Circuit has held that a claim of "harassment" should place *the employer* on notice of possible sexual harassment.  *Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011).  There, Okoli complained of "unethical and unprofessional business characteristics, e.g., *harassment*, degrading and dehumanizing yelling and demanding, disrespect, mocking and gossiping about other colleagues (anyone in the City government) and lack or disregard for integrity."  *Id.*  The Fourth Circuit held that "[t]he City surely should have know that Okoli's complaints of 'harassment' likely encompassed sexual harassment."  *Id.*  If a complaint of "harassment" triggers an *employer's* obligation to investigate sexual harassment, surely it would lead the EEOC to make the same investigation.

> **b.      Ms. Porch's EEOC Charge Satisfies the Fourth Circuit's Standard for Exhaustion Relating to Her Hostile Work Environment Claims**

Ms. Porch's hostile work environment claim, Count III, likewise survives; the charge specifically mentions all of the behavior described in Paragraph 77.  *Sydnor* simply does not require a charging party to specify, in the charge, every single action that contributed to a hostile work environment.  *See also Kidwell v. Sheetz, Inc.*, 982 F.Supp. 1177, 1184 (W.D. Va. 1997).

6

In *Kidwell*, the employer argued that the plaintiff had failed to exhaust her administrative because her charge did not identify an incident where she was required to clean up after her manager after he had masturbated in a company toilet. *Id.* The Western District disagreed and held that it was enough for her charge to allege "that she was subject to hostile work environment sexual harassment…" *Id.* Here, the fact that Daniel Barnett and Chad Radt do not appear in the charge does not affect the *Sydnor* analysis, not least because Messrs. Kello and McDonald's conduct alone would constitute a hostile work environment. The Complaint's obvious gravamen is Ms. Porch's treatment at the hands of Messrs. Kello and McDonald. The fact that she references other behavior by other employees does not single-handedly divest this Court of jurisdiction. Finally, even if this Court decides to dismiss Count I's *quid pro quo* allegations, the facts underlying Count I still support Ms. Porch's hostile work environment claim. *Quid pro quo* propositions can form or contribute to a hostile work environment under Title VII. *See Glover v. Oppleman*, 178 F.Supp.2d 622, 638 (W.D. Va. 2001) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 751-54 (1998)); *Kidwell*, 982 F.Supp. at 1181.

> **c.    Ms. Porch's EEOC Charge, as Written, Identifies Unlawful Behavior Sufficient to Permit This Case to Proceed**

Ms. Porch's EEOC charge states facts sufficient to proceed to court even without *Sydnor*'s "reasonable investigation" analysis. She checked the "Sex" and "Retaliation" boxes on the charge. The charge alleges that AK9I discriminated against women by refusing to deploy them to work with the U.S. military in other countries. AK9I does not move to dismiss Count II, presumably because it recognizes that it cannot argue that Ms. Porch failed to exhaust her administrative remedies. The charge states an obvious claim for sex discrimination in promotion.

The charge also provides enough facts to support a claim for sexual harassment. "To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (citing *Spicer v. Va., Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir.1995) (*en banc*)). The plaintiff must prove the same four elements to demonstrate a hostile work environment. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313-14 (4th Cir. 2008) (citing *Gilliam v. S.C. Dept. of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007)) (alleging hostile work environment based on religion). The third factor considers "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli*, 648 F.3d at 220 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)) (internal quotations omitted). Severity and pervasiveness are classic questions of fact. *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (citations omitted) (holding that jury could find pervasiveness based on male police recruits' frequent use of word "bitch," other epithets against women, and exclusion and special mistreatment of female plaintiff). Just one sufficiently severe incident of harassment can support a Title VII claim for sex discrimination. *See id.* at 220 n. 5. "'Personal gender-based remarks' that single out individuals for ridicule…have a greater impact on their listeners and are thus more severe forms of harassment" than "general crudity." *EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328-29 (4th Cir. 2010) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 197 (4th Cir. 2000)) (finding adequate evidence of severity where supervisor

commented on plaintiff's breast size, asked to see and pump them, and speculated about her libido).

Here, the charge specifies sex discrimination and alleges that Mr. Kello, her "team lead" (that is, supervisor) groped Ms. Porch and sent her lewd text messages.  These acts alone demonstrate unlawful sexual harassment.  The charge also alleges that Mr. McDonald told her that she, personally, was only useful for sex.  This remark was not merely "general crudity" but rather a remark about Ms. Porch's value as a human being *vis a vis* her gender.  Coupled with the allegations regarding Mr. Kello, the charge outlines sexual harassment a hostile work environment.  She then alleges that she complained to management to no avail.  *See id.* at 314 (holding that employee's complaints provided evidence that harassment was unwelcome). Finally, she states that she believes she was fired for pretextual reasons.  This would constitute textbook retaliation for protected activity—here, complaints about the way she was treated.  If nothing else, this Court must allow Ms. Porch's claims based on facts specified in the charge to stand.[2]

### d.   Ms. Porch's EEOC Charge Satisfies the Fourth Circuit's Standard for Exhaustion Relating to Retaliation against Her

To state a claim for retaliation under Title VII, the plaintiff must show that she engaged in protected activity, the employer took an adverse action against her, and there was a causal connection between the protected activity and the adverse action.  *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)).  A plaintiff may sue for retaliation, even if she did not mention retaliation in her EEOC charge or check the "Retaliation" box on the charge form, if a reasonable EEOC investigation would have

---

[2] These would be Counts II, III, and IV. Only Count I is based solely on the *quid pro quo* allegations, which the charge does not specifically reference.

revealed the retaliation complaint.  *Magnuson v. Peak Tech. Servs., Inc.*, 808 F.Supp. 500, 514 n.

12 (E.D. Va. 1992) (holding that plaintiff exhausted her administrative remedies on retaliation

claim even though charge did not specify retaliation); *Tietgen v. Brown's Westminster Motors,*

*Inc.*, 921 F.Supp. 1495, 1499 n. 6 (favorably citing *Magnuson*).  In fact, this Court has held that

an EEOC charge exhausted remedies for a retaliation claim even though the claimant did not

check the "Retaliation" box or advance a retaliation claim.  *Williams v. Mancom, Inc.*, 323

F.Supp.2d 693, 695 (E.D. Va. 2004).  In *Williams*, the claimant charged that Mancom had failed

to rehire her due to her race and/or age, but she did not check the "Retaliation" box or suggest

that she had been retaliated against.  *Id.* at 694.  This Court held that she had exhausted her

administrative remedies because "it is reasonable to expect that an investigation into whether

defendant's motive for not considering plaintiff was discriminatory might uncover evidence of

the related illegal motive of retaliation based on plaintiff's complaints of discrimination."  *Id.* at

695.    Here, Ms. Porch checked the "Retaliation" box on the EEOC charge.  She specifically

described complaining to management about harassment.  She stated, "I believe I have been

retaliated against for engaging in a protected activity…"  The retaliation described in the

complaint is reasonably related to the information in the EEOC charge, which describes enough

of Ms. Porch's complaints to put AK9I on notice of the charges against it.

    **2.**    **Even If This Court Dismisses Counts I, III, and IV, This Court Has Supplemental Jurisdiction over the Claims against Mr. Kello**

        **a.**    **The Claims against Mr. Kello Share a Common Nucleus of Operative Fact with the Other Counts**

The doctrine of supplemental jurisdiction took shape in the U.S. Supreme Court's *United*

*Mine Workers* decision.  There, the Court held that a federal court could exercise jurisdiction

over purely state-law claims if the federal and state claims arose from a "common nucleus of

operative fact." *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 725 (1966).  In 1990, Congress enacted 28 U.S.C. § 1367, which codified some of the federal common law dealing with supplemental jurisdiction.  Section 1367 grants supplemental jurisdiction over state-law claims arising from the same "case or controversy," *id.* § 1367(a), which incorporates the "common nucleus of operative fact" test.  *See White v. County of Newberry, S.C.*, 985 F.2d 168, 171 (4th Cir. 1993) (quoting *United Mine Workers*, 383 U.S. at 725).  Under that test, the court has supplemental jurisdiction if "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding…"  *Id.*  On the other hand, if the state-law claims "are separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count," then the court lacks supplemental jurisdiction.  *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 848 (4th Cir. 1974) (citing *United Mine Workers*, 383 U.S. at 725).

For example, in *Hales*, the plaintiffs, former employees of Winn-Dixie, sued for failure to pay them pursuant to a profit-sharing program (Count I) and failure to provide information about the program as required by statute (Count II).  *Id.* at 838-39.  The Fourth Circuit held that white it might have jurisdiction over Count II based on 28 U.S.C. § 1337, and over Count I based on diversity jurisdiction, it did not have supplemental jurisdiction over Count I.  *Id.* at 848.  The facts involved were too different; the plaintiffs could prove a failure to provide information without ever alleging a failure to pay benefits, and *vice versa.  See id.* at 847-48.  On the other hand, in *White*, the court faced one claim for inverse condemnation and another for violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").  *White*, 985 F.2d at 169.  The inverse condemnation and CERCLA claims had a common element: "that the [defendant] engaged in an act—a release or an affirmative, positive,

aggressive act…that caused contamination." *Id.* at 172. Thus, under either claim, the plaintiffs would have to prove that the defendant had released chemicals into the groundwater. *Id.* The Fourth Circuit held that this commonality was enough to establish supplemental jurisdiction. *Id.*

Mr. Kello argues that because this Court has no jurisdiction over the Title VII claims relating to his actions, this Court has no supplemental jurisdiction over the state-law claims against him relating to his actions.[3] But this is not the standard. The question is whether the state-law claims (battery and intentional infliction of emotional distress) share a "common nucleus of operative fact" with the remaining counts. Mr. Kello's abuse of his supervisory position (to coerce Ms. Porch into sex and repeatedly grope her) is an element of several of the remaining claims. It informs Paragraph 94 of Count VI (Sexual Battery); Paragraph 98 of Count VII (IIED); Paragraph 111 of Count VIII (Negligent Retention); and Paragraph 116 of Count IX (Negligent Supervision). The dog abuse about which Ms. Porch complained (Count V) occurred on the same company trip as most of the harassment and groping, which Mr. Kello did in reliance on his supervisory authority over Ms. Porch. Much of the unpaid overtime she expects to prove at trial (Count X) also occurred during this trip, under Mr. Kello's supervision. Because these claims share a common nucleus of operative fact—nothing less than the employment relationship between AK9I and Ms. Porch, as she experienced it through Mr. Kello's supervision—this Court has supplemental jurisdiction over the claims against Mr. Kello.

---

[3] Mr. Kello does not take the position that, if this Court has subject-matter jurisdiction over the Title VII claims, this Court lacks supplemental jurisdiction over the state-law claims against him. Such claims arise from a common nucleus of operative fact—Mr. Kello's mistreatment of Ms. Porch within the confines of the employment relationship.

**b.** **This Court Should Exercise Its Discretion and Retain Jurisdiction over the Claims against Mr. Kello**

This Court has discretion to retain jurisdiction over state-law claims even when it has dismissed all of the federal claims before it. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing § 1367). In deciding whether to do so, this Court considers factors such as "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citations omitted).

As to the first factor, this Court is an extremely convenient forum for the Defendants. They both reside within its borders. Their retained counsel work out of Norfolk offices minutes from the courthouse. AK9I's headquarters in Carrsville, VA is 38 miles from the federal courthouse and 16 miles from the Isle of Wight County courthouse, where Ms. Porch would presumably have to bring her claims against Mr. Kello if this Court were to dismiss them. Mr. Kello's home is 14 miles from the Isle of Wight County courthouse and 36 miles from the federal courthouse in Norfolk. Thus, for the rare occasions when this litigation would actually require the Defendants to personally appear, having the case in this Court would add perhaps 20 minutes to their travel time. On the other hand, splitting the cases would place Ms. Porch at a severe disadvantage. She resides in Illinois. Two separate lawsuits would no doubt mean two separate depositions, which the Defendants would insist on conducting in person. Ms. Porch would have to appear for trial twice. The Court would, in effect, be punishing Ms. Porch for trying to conserve judicial resources by suing once for all the unlawful conduct the Defendants subjected her to—all during a time when AK9I employed Mr. Kello to supervise Ms. Porch.

The second factor, issues of federal policy, has not received much elaboration by the Fourth Circuit or this Court[4], but it favors supplemental jurisdiction. This Court has an obvious interest in ensuring that Title VII, the FCA, and the FLSA are enforced to their full extent. Even if this Court were to grant both Defendants' motions in full, these federal claims would remain. This Court has at least an equal interest as the state courts in applying their common law; indeed, in a diversity jurisdiction case, that is its duty. Because some federal claims will remain, and they are factually linked to the state-law claims, supplemental jurisdiction is appropriate.

The third factor, comity, favors supplemental jurisdiction as well. Comity includes the idea that federal courts should not relinquish jurisdiction over a claim for which the statute of limitations has already run and will therefore be barred in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351-52 (1988). Mr. Kello coerced Ms. Porch into sex on February 26, 2011. (Compl. ¶ 24.) South Carolina has a three-year statute of limitations for such a claim, S.C. Code § 15-3-540(5), but Virginia's statute runs after only two years, Va. Code § 8.01-243(A). While the Defendants have not asked this Court to decide which state's law applies to Ms. Porch's claims against Mr. Kello as an individual, if this Court relinquishes jurisdiction after February 26, 2013, Ms. Porch's claims will be barred if the state court determines that Virginia law applies. *See Sherley v. Lotz*, 200 Va. 173, 176-77, 104 S.E.2d 795, 798 (1958) (holding that Virginia's, not Tennessee's, statute of limitations applied to wrongful death claim arising from events in Tennessee).

---

[4] Those courts considering the question in unreported cases interpret this factor as a question: does the complaint state any legitimate federal causes of action, or is it a state law claim masquerading as a federal claim? *See, e.g., Taha v. L3 Comm'ns Corp.*, No. 1:09cv720 (JCC), 2009 WL 3837278, at *4 (E.D. Va. Nov. 13, 2009); *Baker v. Sturdy Built Mfg., Inc.*, Civil Action No. 3:07CV212-HEH, 2007 WL 3124881, at *4 (E.D. Va. Oct. 23, 2007).

The fourth factor, judicial economy, also favors supplemental jurisdiction.  To have two separate trials, one in Isle of Wight County and one in this Court, would require a great deal of repetitive testimony.  Obviously, the state-level IIED count would require Ms. Porch to testify to every last incident of harassment to which Mr. Kello subjected her.  Count II, which alleges sex-based discrimination in promotion, would allow testimony regarding harassment as circumstantial evidence of a discriminatory attitude in promotion.  Regardless of overlapping testimony, splitting this case would ultimately require two judges to convene two juries to hear days and days of testimony from all parties.  Given that all of the claims arose from the same employment relationship and, largely, from the same business trip, one trial is more efficient and more appropriate.

**B.      Ms. Porch States a Claim for Intentional Infliction of Emotional Distress**

**1.      Ms. Porch Has Identified Sufficiently Outrageous Conduct[5]**

The Complaint and the Statement of Facts above describe in detail Mr. Kello's sexually abusive behavior toward Ms. Porch, made worse by the fact that he coerced her, through his supervisory authority over her, to tolerate it.  The question is whether his behavior exceeded all possible bounds of decency and whether South Carolina civilized society considers his behavior tolerable.  *See Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E.2d 776, 778-79 (1981) (quoting *Vicnire v. Ford Motor Co.*, 401 A.2d 148, 154 (Me. 1979)).  The South Carolina courts have found outrageous conduct on far less shocking facts than Ms. Porch's.  A jury could find outrageous conduct where:

- the defendant, who was the plaintiff's supervisor, propositioned the plaintiff for sex, retaliated when she refused, grabbed her legs and breasts on several

---

[5] Again, in the event this Court finds that Ms. Porch has not sufficiently alleged severe emotional distress, Ms. Porch requests leave to amend.

occasions, declined to have her classroom repaired, and threatened to move her classroom to the basement, *Frazier v. Badger*, 361 S.C. 94, 98-99, 603 S.E.2d 587, 589 (2004);

- the defendant threatened to call a judge and obtain a second summons to force the plaintiff to pay $25 and said, "Damn the judge," when the plaintiff told the defendant that the judge had already issued the proper summons, *Bell v. Dixie Furniture Co., Inc.*, 285 S.C. 263, 264-65, 329 S.E.2d 431, 432 (1985);

- the lab report performed by the defendant incorrectly indicated that the plaintiff had syphilis, *Hensley v. Heavrin*, 277 S.C. 86, 88, 282 S.E.2d 854 (1981) (*per curiam*); and

- the defendant repeatedly confronted the plaintiff about issues with the house he had purchased from her, including berating her in public and entering her house uninvited to berate her, *Ford*, 276 S.C. at 164, 276 S.E.2d at 779.

Mr. Kello's insinuation that Ms. Porch seeks compensation for her "hurt feelings" ignores the gravity of his abuse of trust.  This Court need not consider text messages as a *sui generis* category of potentially outrageous behavior.  Rather, common sense shows that Mr. Kello's actions—their pervasiveness, their gross sexuality, their discriminatory reductiveness, their bald reliance on the employment relationship—to determine that a South Carolina jury could reasonably find his behavior outrageous.

### 2. South Carolina Law Does Not Preempt Ms. Porch's IIED Claim

Mr. Kello relies on a South Carolina Court of Appeals case and its progeny for the proposition that a plaintiff cannot sue for outrage/IIED if she has another cause of action available for the same facts.  (Kello Mem. 7-8.)  However, in South Carolina, causes of action

16

created by statute do not "preempt" a claim for outrage. *Frazier v. Badger*, 361 S.C. 94, 105, 603 S.E.2d 587, 592 (2004). There, the plaintiff schoolteacher sued an assistant principal, her supervisor, for outrage based on sexual harassment. The defendant argued that because the plaintiff could have brought a civil rights complaint, the *Todd* opinion foreclosed an outrage claim. *Id.* The South Carolina Supreme Court rejected that argument, holding that because the civil rights claim was a creature of statute and not common law, it did not interfere with the plaintiff's ability to file an outrage claim.

In this regard, *Doe v. Erskine College*, upon which Mr. Kello relies, appears to have been wrongly decided by failing to address the *Frazier* case. *See Doe v. Erskine College*, No. Civ.A. 8:04-23001RBH, 2006 WL 1473853, at *13 (D.S.C. May 25, 2006) (holding plaintiff's outrage claim preempted by available remedies under Title IX of the Education Amendments of 1972). The same is true for *Dotson*, which held that the Americans with Disabilities Act preempted the plaintiff's outrage claim. *Dotson v. Avon Prods., Inc.*, Civil Action No. 3:10-881-CMC-JRM, 2011 WL 891863, at *6 (D.S.C. Feb. 8, 2011). Neither case cited *Frazier*. Finally, *Todd* is not so sweeping as Mr. Kello would like. The operative language simply noted that because Mr. Todd sought redress for the publication of falsehoods about him, he should have sued for defamation instead of outrage. *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 283 S.C. 155, 173, 321 S.E.2d 602, 613 (1984). The court did not hold that false statements about a person could never constitute outrage, either alone or in combination with other behavior, rather that those particular false statements were mere defamation. In this sense, this Court should restrict *Todd*'s holding to its facts and other cases involving defamation or other tortious behavior which is not outrageous.

## **CONCLUSION**

This Court should deny Mr. Kello's Motion to Dismiss or, in the alternative, grant Ms.

Porch leave to amend her Complaint to correct any deficiencies.

Respectfully submitted,

_____/s/_____
John C. Cook, VSB 38310
jcook@cookcraig.com
Lee B. Warren, VSB 77446
lwarren@cookcraig.com
Broderick C. Dunn, VSB 74847
bdunn@cookcraig.com
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2013, I will electronically file Plaintiff's Opposition to Defendant Kello's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Arlene F. Klinedinst, Esq.
Michael P. Giordano, Esq.
Vandeventer Black, PLLC
101 West Main Street, Suite 500
 Norfolk, Virginia 23510
*Counsel for Defendant American K-9 Interdiction, LLC*

Deborah C. Waters, Esq.
Waters Law Firm, P.C.
Town Point Center, Suite 600
Norfolk, VA 23510
*Counsel for Defendant John Kello*

_____/s/_____
Lee B. Warren, VSB 77446
lwarren@cookcraig.com
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
*Counsel for Plaintiff*